ALBANY,
October, 1823.

MOTT
v.
HICKS.

---

## MOTT *against* HICKS,

ASSUMPSIT, tried before his honour, Mr. Justice WOODWORTH, at the *New-York Sittings, April* 15, 1822.

The following is an abstract of the declaration, so far as it is material to the questions in the cause:

*1st count.* That the defendant, on the 25*th* day of *April*, 1816, was anxious to purchase from one *Isaac F. Roe*, a quantity of fire wood, for which he demanded a large sum of money, viz. $948\frac{65}{100}$, and, after various negotiations, he agreed to sell, and the defendant to purchase the wood at $948\frac{65}{100}$, to be paid for by a note of the defendant, to be made payable at a certain day, and to be endorsed for the better security of *Roe*: That the defendant, in order to carry this arrangement into effect, *made a note*, dated the day before stated, for $948,65, payable six months after date, to *Israel Horsefield*, or order, and endorsed by him, and then undertook and faithfully promised the plaintiff, that, if he would also indorse it, the defendant would deliver over to him, for his indemnity, the first parcel of glass which he should thereafter receive from the *Woodstock Glass Company*, of which the defendant was president: In consideration of which promise, the plaintiff did endorse the note, and was afterwards compelled to pay it, with costs of suit. This count also contained averments of receipts of the glass and non-delivery, &c. *2d count.* That, on the same day, the defendant made his promissory note, and thereby, six months after the date, promised to pay *Israel Horsefield*, or order,

An action of assumpsit will lie against a corporation, upon the simple contracts of its authorized agents, when acting within the scope of the legitimate purposes of such incorporation.

A corporation may bind itself by contract without its corporate seal. It may give a promissory negotiable note; being included in the word *person*, as used in the statute of 3 and 4 *Ann*, (1 *R. L.* 151.)

Where the president of the *Woodstock Glass Company* executed a promissory note, in the name of the company, for

VOL. I.                    65

ALBANY,
October, 1823.

MOTT
v.
HICKS.

Wood furnished them to use in the manufacture of glass; held, that the company were liable.

Corporations may be thus bound by a promissory note, without a special clause in the act of incorporation, giving them power to issue notes, such as are found in bank charters; several instances whereof were referred to in arguing this cause.

Where such a note was made to J. H. or order, who endorsed it thus—"J. H. agent;" held, that though nothing appeared to shew that he was, in fact, agent, yet he was not liable as endorser; for though payee he has a right to make a special indorsement so as to avoid personal liability, and put his name upon the note for the purpose of passing the interest therein

$948\frac{85}{100}$, for value received, which note was afterwards du- ly endorsed by Horsefield; that the defendant, being anxious to negotiate the note, and requiring, for that purpose, an ad- ditional endorser, applied to the plaintiff to indorse; and promised the plaintiff, if he would endorse, that he (the de- fendant) would deliver into his hands, for his indemnity, the first parcel of glass he (the defendant) should thereafter re- ceive from the *Woodstock Glass Company*, of which he was president; that the plaintiff, relying on this promise, endors- ed the note, and was afterwards compelled to pay it, with costs of suit. This count also contained the same averments as the last, relative to the glass, &c. The 3d count was, in all things, the same as the *first*, with this difference, that the de- fendant was set forth as the *President of the Woodstock Glass Company*, and, as such, anxious to purchase the wood, and contracting for it as such; and, as such, making the note by which the company promised to pay; and then individually promising the plaintiff to indemnify him, in consideration of his endorsing, &c. The 4th count was the same as the sec- ond, with the same variations as in the last. 5th count, that the defendant made his note, and thereby, " by the name and description of the President, Directors and Co. of the Woodstock Glass Company," promised to pay *Israel Horse- field*, or order, as before. It then averred, that the defend- ant was anxious that the plaintiff should endorse the note, and promised him, if he would indorse, to save him harmless from any loss or damage by reason of such indorsement. This count averred the plaintiff's endorsement, in consider- ation thereof; and that he (the plaintiff) was afterwards com- pelled to pay, with costs, and the defendant did not indemni- fy, &c. The 6th count was the same as the 5th, alleging that the defendant made the note as president of the compa- ny, and, thereby, *the President, Directors and Co. of the Woodstock Glass Company* promised to pay, with like aver- ments. The 7th count was the usual one by the plaintiff, as first endorsee, against the defendant as maker of the note. The 8th count was for money paid, laid out and expended; the 9th for money had and received; and the 10th on an in- simul computassent.

Plea—The general issue.

Upon the trial, the plaintiff offered *Isaac Wright*, as a wit- ness, who proved the hand writing of the maker and endor- sers of a promissory note, in the following words :

> " *New-York, 4th mo.* 25, 1816.
>
> Six months after date, *The President and Directors of the Woodstock Glass Co.* promise to pay *Israel Horsefield*, or or- der, nine hundred forty eight dollars $\frac{85}{100}$, value received.
>
> *Whitehd. Hicks*, President.
>
> (*Endorsed*,)
> " *Israel Horsefield*, agent.
> " *Jordan Mott*."

to another, and nothing more.

Such an in- dorsement is equivalent to a declaration, that the indor- ser will not be personal- ly liable ; es- pecially, where the indorsee has notice of the original transaction. And it seems there would be enough on the face of the paper, to put any one on inquiry, so that no holder could recover against J. H. as indorser.

It is analagous to a special endorsement, declaring that the note shall be at the risk of the endorsee, in which case the endorser would not be liable ; and therefore, one making such a special endorsement, is a competent witness for his endorsee in an action by him against the maker ; or against any one who had guaranteed the payment of the note to such endorsee, in behalf of the maker ; but it would be otherwise, in both these instan- ces, if the endorsement were absolute.

Where a note was made by a corporation, payable to J. H. or order, who, *as agent*, endor- sed it to M, and one W. H. agreed with M, that if he would endorse to R, he (W H.) would, on receiving certain glass of the maker, deliver the same to M, to hold as an in- demnity for his (M's) endorsement ; and M endorsed accordingly, and the note was protes- ted and R recovered of M, as endorser ; in a suit by M against W. H. upon the guaranty ; *held*, that J. H. not being liable as endorser, was a competent witness for the plaintiff. But if J. H. had been liable as endorser, he would not be a competent witness. He would not, in such a case, be indifferent between M and W H. as being liable to one of them at all events, upon the ground that W. H. being a surety, might be entitled to stand in the place of M, on paying the debt ; for W. H. would be liable, only upon the condition of first receiving the glass, as a fund for the payment; which would bar a recovery by him against J. H.

One who has a promise of indemnity against a debt, and is sued and compelled to pay it, with costs, may recover over against the promissor, not only the principal and interest upon the money which he has paid, but also the costs.

Where a note is payable to A, or order, who indorses it as agent for another, this addition of agent is merely a declaration that he will not hold himsef liable as endorser ; yet it is, in effect, an endorsement by him, and may be so stated in pleading ; and though it turn out in proof that he was agent, and had a right to endorse as such, yet this is no variance ; es- pecially, where it is stated as mere matter of inducement to an action, brought by the en- dorser against one who has agreed to indemnify him against his endorsement.

Where a judge, at the trial, receives the testimony of a witness, who is objected to as incompetent, upon the facts already proved, reserving the question of competency, the tes- timony of the witness thus sworn, *de bene esse*, is not to have any weight in determining his competency ; but this must be referred exclusively to the other evidence given in the course of the trial.

The question in what cases a publick or private agent is personally liable, considered.

Bills of exchange and promissory notes must be absolute between the original parties ; but an indorser may make his liability depend upon a particular contingency, or restrict it to a particular character or fund.

A note ran thus : " *The President and Directors of the Woodstock Glass Co.* promise to pay," &c. signed " W. H. president ;"—whereas the real name of the company was, " The Woodstock Glass Company," of which W. H. was president ; and the note was set forth in pleading as one against the company by its true name, and it appeared from the evidence that the latter company was intended; *held*, that the company were liable.

The plaintiff's counsel then stated that he should claim the right, as first endorsee, to recover as well upon the note, as being made by the defendant in his individual capacity, as upon the special agreement stated in the declaration. In order to prove the special agreement, he called *Jacob C. Mott*, who testified that he was the brother of the plaintiff; that a recovery had been had upon the note against the plaintiff, as endorsee, by one *Isaac F. Roe*, who held the note; that he called, with the plaintiff, upon the defendant, after the recovery, in the summer of 1818, relative to that business; that the plaintiff stated to the defendant, that he had been cast in the suit, at which the defendant expressed his regret, and said he was sorry that he (the defendant) was out of town, at the time of the trial. The witness further stated that the defendant knew of the pendency of the suit against the plaintiff, on the note. The witness then stated to the defendant, that he, the witness, had understood that the defendant was to have put glass in the plaintiff's hands, to secure the payment of the note, and that this agreement, on his part, had been the plaintiff's inducement for indorsing, to which the defendant replied, that there was such an agreement, and that if it had not been for the election of Mr. *Abeel*, as a director, it would have been complied with. The witness further testified, that the defendant admitted that it was also agreed, that the first glass which should come down after the agreement was to be so applied; that the witness then observed to him, that he was informed he had received glass enough, after the endorsement, to meet the note, to which the defendant replied, that it was not so, and that if he had received such glass he ought to pay the note.

On his cross-examination, the witness stated that the plaintiff had been, previous to the endorsement of the note, a stockholder and director of the *Woodstock Glass Company*, of which the defendant was reputed president, but whether he was a director, at the time the note was endorsed, he was not certain. The plaintiff's counsel then offered *Israel Horsefield*, as a witness, and stated that he intended to prove by him the special agreement laid in the declaration.

The defendant's counsel objected to the admission of the witness, on the ground that he was directly interested in the event of the suit. His Honour, the Judge, reserved the question as to his admissibility, and permitted him to be sworn, subject to the question reserved. This witness testified, that in *April*, 1816, just before giving the note, *Isaac F. Roe*, to whom the glass company were indebted for wood, previously furnished the company, came to *New-York*, and was desirous of payment; that *Roe* declined, taking the company's note without an endorser ; that the witness, who was then the agent for the *Woodstock Glass Company*, and the defendant, who was then president of the company, applied to the plaintiff to endorse the note to be given to *Roe*, in his individual capacity ; that the plaintiff objected for fear of difficulty, as the company was then involved ; that the witness, then being the agent for the company, all the glass from the factory came into his hands as such agent ; that he thereupon proposed to relinquish enough glass to the defendant, of the next parcel which should come down, to meet the payment of the note ; he, on his part, to agree to apply such glass to indemnify the plaintiff on his indorsement ; that the plaintiff and defendant agreed to this arrangement, and as an inducement for the plaintiff to endorse the note, the defendant then agreed to deliver to him the first glass he should thereafter receive from the company as his indemnity ; that in consideration of this undertaking, the plaintiff endorsed the note in controversy ; that the arrangement was made at the defendant's office ; and the note was signed by the defendant, and endorsed by the witness and *Mott*, at the same time ; that, shortly afterwards, 265 boxes of glass came down the river, which the defendant received and the receipt given therefor by him, dated *8th May*, 1816, was produced, signed by the defendant, and is in the words and figures following :

"Received, *New-York*, 5 mo. 8, 1816, of *Ontwater & Deboise*, two hundred sixty-five boxes of glass, per *Jacob Acker*, on behalf of the *Woodstock Glass Company*.

265. *Whitehead Hicks*."

The witness further testified, that the glass, supposing the whole of it to have been of the smallest dimensions, was, at that time, worth from $4,\frac{50}{100}$ to $5 per box ; that the witness, having agreed to allow this glass to come into the defendant's hands, to secure the plaintiff upon his endorsement, the defendant received it directly from on board the sloop, which came to the wharf near the defendant's store, without the knowledge of the witness, and without his order ; that it would have been more proper to have received the witness' order for its delivery, but still he had allowed it to come into the defendant's hands ; that about the beginning of *June* following, he discovered that the defendant had received another parcel of glass, before the endorsement ; and that the witness, thereupon, immediately stopped any further delivery of glass to the defendant, who never received any afterwards. The witness, on further examination, explained, that he was, by the arrangement, to suffer the defendant to receive glass enough to cover the plaintiff as endorser, but no more ; and the defendant promised to apply it in payment of the note ; and that the plaintiff refused to endorse the note on any other terms. The witness, on his cross-examination, stated that the plaintiff, at the time the note was given, and for several years before, had been, and was a stockholder, and one of the directors of the company ; that the witness afterwards sued *Hicks*, the defendant, and claimed, among other things, the 265 boxes of glass, on the ground that he had not applied it according to his agreement, and was, therefore, accountable to him as agent of the company for it ; that the referees, however, in his suit, did not allow him the glass.

The plaintiff then produced the record of a judgment, in the Supreme Court of the state of *New-York*, in favour of *Roe*, as endorsee, against *Mott*, the plaintiff, as endorser upon the note, for $1222,\frac{71}{100}$ damages and $155,\frac{80}{100}$ costs, docketed *August* 10, 1818. The plaintiff also produced a satisfaction piece, in due form, shewing that the judgment had been paid.

The plaintiff having rested on this testimony, the defendant called *Michael M. Titus*, who testified, that he was, at the

time, a stockholder in the company, and a partner of the defendant, who was both president and treasurer of the company; that the note in question was given for a demand claimed by *Roe*, on account of a contract to furnish wood to the company; that the plaintiff and *Horsefield* first applied to the defendant with *Roe*, who had come down on the business, to make some arrangement respecting it, when the defendant told them, that *Roe* had broken the contract, and been guilty of a fraud, and he, the defendant, would have nothing to do with it; that, at the time when the witness, *Horsefield*, stated the note was given, which was after the above application, *Horsefield* and the plaintiff called together at the defendant's office, and stated, that they had agreed to give *Roe* a note of the company, which note they produced, and wished him to sign it as president. He remonstrated with them for making the settlement, but said he supposed he must sign the note as president, if they required it, which they did, and he accordingly signed, and they, at the same time, endorsed the note and went away, the defendant telling them, the last thing he said, as they were leaving the office, that they had done wrong, and remonstrating against it; that nothing at all was said or agreed about the defendant's delivering over glass as security to the plaintiff, or appropriating glass to pay the note, and no such agreement or understanding was had or made on the subject. About a month afterwards, the latter part of *May*, the plaintiff and *Horsefield* called on the defendant, and wished to know if he would not turn out glass to secure this note, which he declined, stating to them, that they well knew all the glass was already arranged to pay other debts prior to this; they replied, that they supposed there was more than enough to pay those debts, and the defendant said, if there should prove to be more than enough, the plaintiff should have it. They then went away, and *Horsefield* then stopped the glass from coming to the defendant, who never received any more afterwards.

The witness also stated, that he was present at the conversation testified to by the witness, *Jacob C. Mott*; and that the defendant, in that conversation, did not state that he

was to deliver glass to the plaintiff, but only, if they had permitted him to go on and receive the glass, the plaintiff would have been paid.

On his cross-examination, this witness testified, that he was present when *Hicks*, the defendant, signed the note in controversy, but he was not confident enough, as to the other facts, to say whether the plaintiff endorsed the note in his presence ; that there was no conversation about guaranteeing *Mott ;* that when the plaintiff and *Horsefield* called on the defendant, about a month after his signing the note, the defendant said, that, if the directors had allowed the glass to come into his hands, as they had agreed, the plaintiff would have sustained no loss.

The plaintiff then called *Israel Horsefield* again, who testified, that the statement of the last witness was not true ; that the witness and the plaintiff had not called on the defendant to persuade him to sign the note, but, on the contrary, the witness and *Hicks* had made the arrangement with *Roe*, and had persuaded the plaintiff to endorse, as the witness before testified ; that *Michael Titus* was passing to and fro in the store, while the witness, the defendant and plaintiff were talking on the subject, previous to the plaintiff's endorsing ; and, not being concerned in the matter, could not have attended particularly to what passed, nor could he have heard their conversation ; that, as to the statement of *Titus*, relative to the witness and the plaintiff having called a month afterwards on the defendant, to desire him to turn out glass for the plaintiff's indemnity, and the conversation alleged by *Titus* to have taken place at that time, no such interview or conversation had passed.

*Jacob C. Mott* was then again called by the plaintiff, who testfied, that *Michael Titus* was not present at the conversation testified to by him ; that he was satisfied his statement of that conversation was, in all its parts, true, he having particularly noted in writing, what passed at the conversation, immediately afterwards.

The defendant then offered *Gilbert Hicks*, as a witness, to prove the state of the accounts between himself and the company. This was objected to by the plaintiff, but ad-

mitted by the Judge. This witness testified, that he is the son of the defendant ; that he did not keep the defendant's accounts with the company, but had examined them ; that his father is in advance to the company, but how much he could not say.

The plaintiff then called *Israel Horsefield*, who testified, that the defendant's accounts were still unsettled with the company. The plaintiff then offered to shew, that the company claimed a large balance against the defendant. This evidence, however, was overruled by the Judge.

His Honour, the Judge, then charged the jury ; and, after remarking upon the improbability of the plaintiff's giving his personal responsibility for an involved company, without some special guaranty for his indemnity, stated that the evidence of the witnesses for the special agreement, and the evidence against it, were in direct collision ; that it was for the jury to say, which of the witnesses appeared to have had the best opportunities of understanding what had passed between the parties, for he presumed, from the appearance of the witnesses, they were men of character, and would not wilfully swear false in this transaction ; that if they found for the plaintiff, he was entitled to recover the amount of the judgment obtained by *Roe* against him, with interest.

A question was then raised by the defendant, whether the plaintiff was entitled to recover the costs of suit in the case of *Roe* ; whereupon his Honour, the Judge, proposed, which was accorded to, that the jury, if they found for the plaintiff, should find the whole amount, to be afterwards liquidated by the Court, according as they should or should not consider the plaintiff entitled to the costs.

The jury found for the plaintiff the amount of the judgment recovered on the note by *Roe* against the plaintiff, with interest.

*W. Slosson*, for the defendant. It is contended, that a new trial ought to be awarded, on the ground that *Horsefield*, the witness, was inadmissable ; or, if admissible, then, that the evidence does not support the declaration.

ALBANY,
October, 1823.

MOTT
v.
HICKS.

The plaintiff's recovery can be supported upon the special counts, only, by which the defendant is averred to have come under an agreement, that in consideration the plaintiff would indorse a certain note, made by the company, or by *Hicks*, as the president of the company, in favour of, and *endorsed by Horsefield*, he, the defendant, would apply the first glass that should be received by him, towards indemnifying the plaintiff against his endorsement. The plaintiff, therefore, to entitle himself to recover, was bound to shew, that he endorsed the note *stated* in the declaration, and that the defendant received glass sufficient to provide for the payment.

To prove this, he offered *Horsefield*, the *prior* endorser, who was clearly an inadmissible witness, on the ground that he had a direct interest in effecting a recovery. The objection is, not that as endorser, simply, he is not a witness against the maker, where the question would turn upon the point of his interest being balanced, but on the ground that he is adduced to prove that *Hicks*, who is *not at all* liable as *maker*, and against whom, therefore, *Horsefield* could not, in any action on the note itself, recover, was liable, by reason of his collateral undertaking, to apply the glass, which should come to his hands, in payment of the note. The witness, therefore, is produced to establish a liability, and create a collateral fund for the payment of the note, and which, if established, goes directly to exonerate himself. A more clear and palpable interest cannot be adduced.

But it will be objected, that *Horsefield* endorsed the note as *agent*. The answer is, that the note is drawn in his favour individually, and not as agent, and that the addition of the word "agent" to his signature, cannot exonerate him from his liability as endorser. The note is, in form, a promise by the company to pay him generally, not as agent, or otherwise, except in his own *private* character. Now, he can endorse it in no other character—certainly not as agent of the company, because it is not payable to him in that character. The note is not made payable to the company's own order, which it must have been to have enabled *Horsefield* to endorse it as their agent, but to him individually. The

plain test is this : By the act of endorsing, some one must be liable in the character of endorser : if the endorsement does not bind the principal, it must bind the endorser. It is impossible that this endorsement can bind the company as endorsers, for the note is made payable to *Horsefield* in his individual character, and not to the company's order, and, of course, the title to the note can only be passed by his endorsement in that character, and not as agent. The very term *agent* implies an act of the principal by his agent. Besides, the word *agent* is wholly senseless ; because it no where appears of whom, or in what respect he was agent. No principal was disclosed. (*Thomas* v. *Bishop*, 2 *Str.* 955. *Cas. Temp. Hardw.* 1, *S. C. and the cases cited in Chitty on Bills, Amer. ed. of* 1821, *p.* 56.)

But if *Horsefield* was agent, and as such the endorsement is to be considered the act of the company, then there is a fatal variance between the note *stated in the declaration* and the note *proved.* The declaration states the note to be drawn in favour of, and endorsed by *Horsefield*, in his private character simply ; and the note proved upon the hypothesis of *Horsefield's* agency, is a note in the company's own favour and endorsed by them, by their agent. It is not, then, the note, respecting which the promise to indemnify is laid in all the counts in the declaration.

Viewed in either way, there must be a new trial. If *Horsefield* is liable to the plaintiff as an endorser, then he is directly interested and not admissible. If, on the other hand, he is to be considered the agent of the company, then the note described in the special counts is different from the note produced and proved, and the plaintiff must fail for the variance.

*J. Anthon,* contra. The first enquiry which naturally presents itself, in this case, is, whether the note binds the *defendant,* or the *Woodstock Glass Company ?*

If the defendant is bound, personally, by that note, then, being already bound to indemnify the plaintiff, as maker, the whole body of facts testified to by *Horsefield*, relative to the defendant's special guaranty, becomes superfluous.

I propose, first, to shew that the company is in no wise bound by the note, and then, as a necessary corrollary, that the defendant is alone personally bound as maker.

The statutes creating this company are publick, and I shall, therefore, refer to them as such.

The first is entitled " an act to incorporate the stockholders of the *Woodstock Glass Manufacturing Society*," and was passed in 1809 : the second, " an act to amend an act. entitled, an act to incorporate the stockholders of the *Woodstock Glass Manufacturing Society*," and was passed 19*th June*, 1812.

By the first act, this corporation is named, " *The President and Directors of the Woodstock Glass Manufacturing Society* :" by the last,(a) the name is altered to " *The Woodstock Glass Company.*"

(a) 6 Laws, 575, Webster & Skinner.

Both statutes create a corporation, empowered to act by its *corporate seal only*, in the usual form, and in neither statute is any clause found enabling the president. in any manner, to bind the company by his *signature*. I am aware that, in various corporations, the president possesses this power ; but it will be found that, in every instance, it is expressly given by the act of incorporation, and where it is not so given it cannot be exercised. On this head the general and invariable rule is, that a corporation can only act in the mode prescribed by the law creating it. To enable its agents to bind the company, they must act pursuant to the requisites of the incorporating statute.(b) To shew that this power to bind a corporation, by the signature of the president, must be expressly given in the act, I refer the Court to the standing clause on the subject, which is inserted in every banking corporation :(c) " And bills or notes which may be issued by order of the said corporation, promising the payment of money to any person or persons, his, her, or their order, or to bearer, though not under seal of said company, shall be binding and obligatory," &c. The statutes cited are examples of the mode of conferring this power. We neither find this clause, nor any clause of similar import, in the act to incorporate the *Woodstock Glass Company*, and it therefore follows, that the company can only be bound by

(b) Beatty v. Marine, Ins. Co. 2 John. 109. Head v. Providence, Ins. Co. 2 Cranch, 166.
(c) Bank of Niagara, 4 Laws, 187a, s. 9. Jefferson County Bank, 282a, s 8. Geneva, ib. 130b, n. 9. Auburn, ib. 134b, s. 9. Washington & Warren Bank, ib. 185b, s. 9. Plattsburgh, ib. 210c, s. 9, &c. &c.

*its corporate seal.* The note, consequently, does not bind the company, for two reasons. 1st. Because the company is not described in it by its name of incorporation, " *The Woodstock Glass Company.*" but by the name of " *The President and Directors of the Woodstock Glass Company.*" 2d. Because, even if correctly named, the president had no power, by his bare signature, to bind it, the seal of the company being necessary for this purpose.

The company, then, not being bound by this note, it follows, that the defendant is bound in his individual capacity. This was so held, where the parties had described themselves in a bond, as "Trustees of the Baptist Society, &c." but, in sealing it, they used their own, and not the corporate seal, the words, " Trustees, &c." being deemed *descriptio personarum* merely.(d)

(d) *Taft* v. *Brewster,* 9 *John.* 334.

The 1st, 2d, 5th and 7th counts, are all framed on this personal responsibility of the defendant—the 1st, 2d and 7th setting forth the note, according to its legal import, as the note of the defendant, without giving his description ; and the 7th count alleging that the defendant made the note, by the name and description of " The President, &c."(e)

(e) *Chitty on Bills,* 628, *n.* 5, *Lond. ed.* 1818, *and cases there cited.*

If I am correct, in this view of the case, it follows, that proof of the hand-writing of the maker and endorsers was enough for our purpose, and that the additional evidence of a special undertaking, on the part of the maker, to indemnify the last endorser, was superfluous ; and if an error had occurred, in admitting the endorser to prove it, it would be idle, on this account, to award a new trial, the purposes of justice not requiring it.

But again : in this view of the case, the defendant being liable as maker, the first endorser was a competent witness to prove all he has proved, as the defendant himself admits in his argument. He would not, indeed, have been a good witness to prove the hand-writing of the maker, on account of the implied warranty on his part, that the maker's signature was genuine. This difficulty we obviated by proving the hand-writing by *Isaac Wright,* BEFORE we offered *Horsefield* as a witness, *using him only to make out the collateral matter.*(f)

(f) *Vid. Stevens* v. *Lynch,* 2 *Campb. N. P.* 332. *Skelding* v. *Warner,* 15 *John.* 270.

ALBANY,          In these several views of this subject, all resting on the
October, 1823. defendant's personal liability on the note, the objection to
MOTT          the admissibility of *Horsefield* is utterly untenable.
v.                 To discard, for the moment, however, all the preceding
HICKS.        reasoning, let us consider the subject in the light in which
the defendant places it.

He, in the first place, contends, that the note in contro-
versy, is *the note of the company, and not the individual note
of the defendant.* I do not know by what reasoning this
can be supported. But if, from the nature of the transac-
tion, or from any other cause developed in the proceedings,
it should be thought that this ought to be deemed the note of
the company, I will not quarrel with this reasoning, howev-
er illogical it may be, provided it is extended so far as to em-
b ace *Horsefield*, the endorser who, in this view, no more
*intended* to bind himself personally, when he called himself
"agent," than the defendant did, when he called himself
" president," in which event he will stand every way disin-
terested.

The defendant's counsel assumes, as matters conceded, 1.
The responsibility of the company, and 2. The individual
liability of *Horsefield ;* and then contends, that *Horsefield*
was inadmissible as a witness, because he had a direct in-
terest in the event, *his evidence establishing a fund for the
payment of the note.*

Granting, then, the premises assumed, it necessarily fol-
lows, that if the defendant was not responsible, as a party
to the note, yet, for all the purposes of this discussion, his
name must be considered as not on the paper at all ; it is
then the note of the company in favour of, and endorsed by
*Horsefield.* The defendant's undertaking, then, is entirely
collateral ; and so it is considered in all the counts in which
the note is treated as the note of the company. Now can
it be for one moment contended, that in an action brought
by the holder of a note against a third person, on a special
guaranty of payment by the maker, that a prior endorser
cannot be received as a witness to prove the collateral under-
taking ? Is he, in any manner, a party to that contract ?
Can the record of judgment, in such a case, ever be given

in evidence in his behalf? Does a recovery on the special guaranty cancel his endorsement? Surely not. His liability, and the liability of all the parties, prior to the holder, remain the same. No collateral contract made between the holder and any third party, for his own indemnity, can ever affect the several contracts of the parties to such notes.

Again : a third person, who has thus guaranteed to the holder the payment of the note, would, in the event of his being compelled to pay upon such guarrantee, become the true owner of the note, and could compel the assignment of it by the holder to him, for his indemnity, after such payment ; and he would then stand in the place of the holder, and would have his action against the prior parties for his indemnity. The endorser, in such an action, on such a guarantee, stands indifferent between the parties, being liable to the one or the other, on his endorsement.(g) It is manifest, therefore, that, on the very grounds assumed by the defendant's counsel, *Horsefield* was a good witness, and the fallacy of his argument consists in taking for granted, what can never be legally or properly conceded, that by a recovery against *Hicks*, on his special guaranty, *Horsefield's* endorsement was discharged. " *Quacunque via data,*" therefore, *Horsefield* is a competent witness.

The only remaining question, then, is, whether the verdict is to be reduced, by deducting the costs of the suit brought against the plaintiff by *Roe*. This note, as far as it concerns the plaintiff, was entirely an accommodation note. His endorsement was without any consideration or value, and for the accommodation of the defendant and others engaged in negociating it ; and the defendant, having undertaken to indemnify him, is bound to pay, not only the amount of the note, but also all damages the plaintiff may have sustained by being sued for it, he being bound to indemnify him against all the consequences of an endorsement made for his accommodation. This point is well settled, both in this Court and in *England*.(h)

*Slosson*, in reply. The argument on the other side calls the attention of the Court from the real point in the case.

ALBANY,
October, 1823,

MOTT
v.
HICKS.

(g) *Milward* v. *Hallet*, 2 *Caine's Rep*. 77.

(h) *Hubby* v. *Brown* & *Nichols*, 16 *Johnson*, 70. *Jones* v. *Brookes*, 4 *Taunt*. 464.

*Horsefield* was offered *expressly* to prove the *collateral* guaranty ; and the true question is, whether he was compe- tent for that purpose ; and if not, then, whether the plain- tiff, upon the facts disclosed by the *other* witnesses, is enti- tled to recover? İt is *clear*, that, whether the note be considered as binding on the company or not, if *Horsefield's* testimony is rejected, there is not a particle of ground to justify the verdict.

I do not accede to the plaintiff's proposition, that the note is void as against the company, either on the ground of a variance, (for certainly the *true* name might have been averred and shewn) or of an incapacity in the company to give a note for a debt contracted in the *course of their* business, which, according to the modern decisions, I appre- hend, is by no means a settled point ; but I put the case up- on the broad ground, that, conceding these points to the plaintiff, *Hicks*, the defendant, never was, or could be liable to either the plaintiff or *Horsefield, upon the note itself.*

This is clear, both from the testimony of *Horsefield* and of *Titus,* the defendant's witness. Both these witnesses con- cur, that the note was given, and was endorsed by the plain- tiff, with a full knowledge that it was for a pre-existing debt of the company ; that *Hicks* signed it *merely* as *president,* and it was perfectly understood between them, that he was not to be liable in his individual capacity. Nay, the very ground upon which *Horsefield* puts it is, that the plaintiff re- fused to endorse it, unless *Hicks* would give his collateral guaranty to pay out of the glass he should receive.

It is immaterial whether a third person, not party to the arrangement, might have the right to recover on the note against *Hicks*, as maker, in his individual capacity. It is enough for this case, that it was clearly and distinctly un- derstood, that neither this plaintiff, nor his immediate en- dorser, *Horsefield,* could have such right, being both of them parties to the original transaction, and taking the note, with a full knowledge that *Hicks* merely signed it, *without consid- eration, in his official character, at their request.*

To follow the argument a step farther : suppose the glass had never come to the hands of *Hicks,* could the plaintiff

ALBANY,
October, 1823.

MOTT
v.
HICKS.

have recovered against him ? Would it not have been a direct violation of the very agreement, that he was to indemnify *Mott*, *only* on the contingency of his receiving the glass ?

But if *Horsefield's* testimony is rejected, then *Titus* stands uncontradicted and unimpeached. He states that *Horsefield* and *Mott* called on the defendant, and stated that they had agreed to give *the company's* note to *Roe* for the demand, *which note they produced and wished him to sign as president ;* that, after remonstrating against the arrangement, he said he supposed he *must* sign it as *president*, if they required it, *which they did ;* and he, accordingly, signed it, and they endorsed it. It will be recollected, that both *Horsefield* and *Mott* were then directors, and had a right to require the defendant, in his official character, to execute instruments of the company. But whether they had the right or not, they assumed it, and it would be monstrous, that they should be allowed themselves to bring an action against him, to charge him in his *individual* character, for an act they *required* him to do against his assent, and with a remonstrance on his lips, in his official character. He may justly say, *non hoc in fœdera veni.*

The case then comes back to the position, with which I started, in the original argument, that *Hicks* never was or could be made liable on the note itself, either to *Horsefield* or *Mott*. If liable at all, it is merely upon his collateral undertaking, to apply the glass which should come into his hands, for *Mott's* indemnity.

Now, on this subject, we confidently insist that *Horsefield* is an incompetent witness, on the ground, that having no remedy over against *Hicks*, on the note itself, he is produced to establish a liability and create a fund, which, when obtained, as far as it is obtained and recovered, exonerates himself from liability to *Mott*, the holder.

If *Horsefield is* liable as endorser, a more direct and palpable interest in the *event* of the cause cannot be stated. The recovery is immediately for *his* use, because it relieves him from paying that, which, if he pays, he can never re-

cover over of the maker. It is so much saved to him. (*Marquand* v. *Webb,* 16 *John.* 93.)

That *Horsefield is* liable as endorser, is, impliedly, at least, conceded by the very argument of the counsel, and is not attempted to be controverted. We might, therefore, assume it, *ex consessis,* and indeed, he is *obliged* to concede it for the reason stated in the opening argument. Every count on the note states him expressly to be an indorser in his *individual* capacity. Proving an endorsement by him as agent, would, therefore, be a *fatal variance,* and the verdict must *inevitably* be set aside. Unable to resist this conclusion, which he has not, in the slightest degree, attempted to question, the plaintiff's counsel has bent the whole force of his argument, to shew that the note is to be considered as the individual note of *Hicks* also. I have shewn, and hope that even if that might be the legal effect of his signature, yet as between *these* parties there cannot, by possibility, be a recovery against *him* on the note itself, *as a note.* These considerations do not apply to the endorser, whose liability was not only pledged, but understood to be so. The addition of " agent" to his name, was mere surplusage, senseless in itself, inconsistent with the character in which the note was drawn, and intended only to designate to what account he should charge his liability. That it was so understood by *Mott,* the holder, is also clear, as, although the whole fate of the cause depended on his testimony, he refused to release him.

But it is said, that, admitting all which has been contended. by the defendant, to be correct, yet *Horsefield* stands in different ; and for what reason ? For this, that *Hicks'* undertaking being collateral, if he is compelled to pay, he will have a right to claim the security in the plaintiff's hands ; and may himself bring an action against *Horsefield* as *endorser.* In this, as throughout, the learned counsel forgets, or overlooks the facts in the cause, and the very object for which *Horsefield* was offered as a witness. It was to prove that *Hicks* actually had received the funds, (to wit, the glass) which ought to be applied to pay the note, and that he was to be charged in respect to those funds.

Now, it is an absurdity to say, that if *Hicks* is charged on the ground that he had received the funds to pay, he can claim a right to recover against the endorser. The very position is, that by the receipt of the funds he was the ultimate debtor, to that extent, and could by no possibility have recourse, either at law or in equity, to any party on the note.

From these considerations, it follows :

1. That *Hicks*, whether the note be considered as the company's note, or as his individual note, never was liable on any contract arising out of the note *as such*, either to *Mott* or *Horsefield*.

2. That *Horsefield* is liable *as endosser* to *Mott*, and that as such, he is directly interested in the event of this suit.

3. But if not liable, on the ground of his signature as agent, then there is a fatal variance between the note proved and that declared on : so that, to use the counsel's own quotation, " *quacunque via data,*" the verdict must be set aside.

One word only, as to the amount of damages. We contend that the defendant, in any event, is not liable for the costs in the recovery against *Mott*.

*Mott* ought to have paid the note when called on by the holders ; and not have submitted to a suit. But if not, he should have given notice to *Hicks*, and requested him to pay.

Instead of this, no application to *Hicks* is shewn, until after the recovery against him. He has, therefore, incurred these costs in his own wrong. In no point of view, therefore. ought the defendant to be charged with this part of the demand.

WOODWORTH, J. It is very clear that *Hicks* was not liable in his individual capacity, as maker of the note. The case is distinguishable from *Taft* v. *Brewster and others*, (9 *John.* 334.) There the defendants acknowledged themselves bound, by the description of " Trustees of the *Baptist Society* of the town of *Richfield*." The Court considered it a mere *descriptio personarum ;* and that the defendants

were individually liable.  By the note in this case, " the: president and directors promise to pay," subscribed by the. defendant, as " president." It is evident, here was no per- sonal engagement, nor was any such intended.  The plain- tiff and *Horsefield* were intimately acquainted with the whole transaction.  The endorsement of the former was obtained, for the purpose of giving credit to the note, not on account of the defendant's personal responsibility being questionable, but because the company were involved, and in doubtful credit.  It cannot therefore be permitted to the plaintiff, or *Horsefield*, to call on the defendant in his individ- ual capacity.  If he is liable, it must be on the collateral undertaking set out in the special counts.  Whether the *Woodstock Glass Company* were bound by the note, cannot be decided merely by the want of a seal, for a corporation may make a valid contract not under seal.  (12 *John.* 231.)

In 7 *Cranch*, 299, (*Bank of Columbia* v. *Patterson*,) the question whether a corporation could make a contract le- gally binding, except under its seal, was fully examined.  It. was considered as sound law, that wherever a corporation is acting within the scope of the legitimate purposes of its institution, all parol contracts, made by its authorized agents, are express promises by the corporation ; and all du- ties imposed on them by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action may well lie.  This Court, on several occasions, have taken the same ground.  Although the par- ticular cases may not have required them to carry the doc- trine to the same extent, they have nevertheless consid- ered the law correctly settled by the Supreme Court of the *United States*. (12 *John.* 227, *Danforth* v. *Schoharie Turnpike Company*.  14 *John.* 118, *Dun* v. *Rector of St. Andrews' Church*.)  The great convenience of such a rule, indeed the necessity, in some cases, to prevent a failure of justice, will not be doubted.  Modern decisions (although it may have been anciently held otherwise) warrant a re- laxation of such technical strictness, not answering any salu- tary purpose.  The note declared on was given for a de-

ALBANY,
October, 1823.

Mott
v.
Hicks.

mand against the company, for supplies of wood : the de-
fendant was president and treasurer : *Horsefield* was agent :
they concurred in giving it : it was given for the benefit of
the corporation, by their authorized agents : the assent of
the corporation is inferrible from such acts : they are
within the principles laid down, and consequently binding.
But admitting the corporation were liable, it seems to me
this will not decide, whether *Horsefield* was interested in
the present suit : that will depend on the question of his li-
ability to the plaintiff as endorser. If liable to him, he is
certainly an interested witness ; for the effect of his testi-
mony is to charge the defendant on a collateral undertaking,
and create a fund for the payment of the note. If the
plaintiff is satisfied from this source, *Horsefield* is dischar-
ged. The defendant could not, after payment, substitute
himself in the place of the plaintiff, and call upon *Horse-
field* ; for it will be remembered, that the recovery against
him would be founded on the fact, that he had received
funds which ought to be applied—this making him the
debtor to that extent. No principle of law or equity could,
in my view, sanction such a claim, if attempted to be en-
forced.

The remaining inquiry is, whether the plaintiff could sus-
tain an action on this note against *Horsefield* as endorser ?
I incline to think he could not. As to personal liability to
the plaintiff on the note, I apprehend he stands on the same
ground as the defendant. To *Roe*, the holder, or any other
third person, he might be holden ; but here is a different
state of facts. *Horsefield* acted as agent in this transaction,
and *Mott* knew it : he also knew that the note was given by
the company for their proper debt. *Titus*, the defendant's
witness, says the plaintiff and *Horsefield* called together on
the defendant, and stated that they had agreed to give *Roe*
a note of the company, and wished the defendant to sign it
as president. The note was executed and endorsed by the
plaintiff and *Horsefield*, and passed to *Roe*, who recovered
the amount from the plaintiff. *Jacob C. Mott* testified, that
he stated to the defendant, that he understood he was to put
glass in the plaintiff 's hands, to secure the payment of the

ALBANY,
October, 1823.

MOTT
v.
HICKS.

note, and that agreement had been the plaintiff's induce- ment for endorsing the same : the defendant replied, there was such an agreement. From the testimony of *Titus*, that the plaintiff acted jointly with *Horsefield*, in obtaining the note, for the purpose of discharging the debt to *Roe*, it would seem to follow, that if *Roe* compelled the plaintiff, who was the second endorser, to pay the money, the plain- tiff must necessarily have a right of action against *Horsefield*, to contribute a just proportion, and consequently he must be an interested witness ; for although the company were li- able on the note, they might, or might not be responsible ; and a recovery against the defendant would, at least, be gaining additional security, in which *Horsefield* had a deci- ded interest. When, however, the evidence of *Mott* is con- sidered, I think it evident, as between *Horsefield* and the plaintiff, the latter did not look to the former as a surety, or liable to him ; but that he trusted solely to the agreement to deliver glass for his indemnity. The defendant admitted to the witness, *Mott*, that this was the inducement. This fact, connected with another, that *Horsefield* was agent of the company, and annexed the word *agent* to his signature, seems to warrant the conclusion that it was never intended he should be answerable to the plaintiff in any event ; and that the designation of the character in which he endorsed, was a declaration to the plaintiff, that he intended to incur no individual responsibility. The true question is, what was the meaning of the parties ? *Horsefield* professed to act in the capacity of agent. It was analagous to a special assign- ment to the endorsee, at his risk, as in *Rice* v. *Stearns*, (3 *Mass. Rep.* 225,) where it was holden that the endorser was not liable to pay. *Parsons*, Chief Justice, observed, " as the promisee had the property of the note, he might dispose of it on what terms he pleased, with the assent of the purcha- ser, and the latter cannot complain of the necessary effect of his own agreement. The endorser cannot be charged upon his own contract, decidedly against the express intent of it." So here, *Horsefield* elected to endorse, in the character of agent. In *Macbeath* v. *Haldermand*, (1 *D. & E.* 181,) the

ALBANY,
October, 1823.

MOTT
v.
HICKS.

words of the defendant's letters were sufficient to have rendered him liable ; but it appeared that he acted as a commanding officer, and that the supplies were for the use of the publick. It was determined that the action could not be maintained. *Ashurst,* Justice, said, the question must be, what was the meaning of the parties at the time of entering into the contract ? He said that a person acting in the capacity of an agent, may, undoubtedly, contract in such a manner as to make himself personally liable, and that brought it to the true question, namely, whether, from any thing that passed between the parties at the time, it was understood by them that the plaintiff was to rely upon the personal security of the defendant. The general principle is recognized in *England,* and in our own country, and cannot be questioned. (1 *D. E.* 674. 1 *Cranch,* 325. 8 *Mass. Rep.* 162. 3 *Caines'* 69.) In 15 *John.* 1, (*Rathbone* v. *Budlong,*) it is said, there is no difference between the agent of an individual and of the government. The question in all cases is, to whom was the credit given ? (18 *John.* 407.)

In examining the question of *Horsefield's* interest, I have kept out of view every thing testified by himself ; for when he was objected to, he ought or ought not to have been rejected. If the former, and yet is admitted, as in this case, *de bene esse,* we cannot receive his testimony to remove the objection, which might otherwise be urged against it. But if, from the disclosures of other witnesses in the course of the trial, it appears that he stands indifferent, the Court will receive his testimony. It is on this ground I have considered the question.

If *Horsefield* was competent, I think the verdict is supported by the weight of testimony, and ought not to be disturbed.

But it is contended, that if *Horsefield* was not personally liable, then there is a fatal variance between the note declared on, and the note proved. This objection is not well founded. The description of the note and the endorse-

ment by *Horsefield*, may be considered as inducements to the action. The liability of the defendant arises on the special contract made with the plaintiff, by which the former promised, if the latter would endorse, to deliver glass, for his indemnity. Whether *Horsefield* endorsed in his individual capacity, or as agent for the company, does not affect that liability. In either character, it was a valid transfer of the note to the plaintiff.

By the averment, that *Horsefield* endorsed, must be understood, that his interest passed to the plaintiff. This allegation is satisfied by the evidence at the trial. I am of opinion that the plaintiff is entitled to judgment.

SUTHERLAND, J. It is perfectly well settled, that if a person undertake to contract as agent for an individual or corporation, and contracts in a manner which is not legally binding upon his principal, he *is personally responsible* (*White* v. *Skinner*, 13 *John. Rep.* 307. *Randal* v. *Van Vechten and others*, 19 *id.* 60. *Taft* v. *Brewster and others*, 9 *id.* 334. *Tippets* v. *Walker*, 4 *Mass. Rep.* 595. 7 *T. R.* 207. *Thomas* v. *Bishop*, *Cas. Temp. Hard.* 1. 3 *Johns Cas.* 70.) And the agent, when sued upon such a contract, can exonerate himself from personal liability, only by shewing his authority to bind those for whom he has undertaken to act. It is not for the plaintiff to shew, *that he had not authority*. The defendant must show affirmatively, *that he had*. But as the authority of the defendant, to act for the company on this occasion, was not questioned at the trial, we are now, perhaps, bound to presume it.

If the defendant was instructed or authorized by the company to make the note in question, then there is no doubt that they are liable to the plaintiff for the amount which he has paid ; and if the company are liable, the defendant is not. It is either the note of the company, or of *Whitehead Hicks*. It cannot be both.

The ancient technical doctrine, that a corporation could not contract, except under its corporate seal, is now exploded. There are a variety of cases in this Court, in which they have been held liable upon *implied* as well

as *express* promises. (*Danforth* v. *Schoharie Turnpike Company*, 12 *John.* 227. *Dunn* v. *Rector of St. Andrews*, 14 *John.* 118. *Randal* v. *Van Vechten and others*, 19 *John.* 60.) In the case of *The Bank of Columbia* v. *Patterson*, (7 *Cranch*, 306,) Mr. Justice *Story*, in discussing this point, says, " it would seem to be a sound rule of law, that whereever a corporation is acting within the scope of the legitimate purposes of its institution, all parol contracts made by its authorized agents, are *express* promises of the corporation ; and all duties imposed on them by law, and all benefits conferred at their request, raise *implied* promises, for the enforcement of which an action may well lie."

The *Woodstock Glass Company*, therefore, are clearly responsible to the plaintiff, either in an action upon the note itself, or in an *indebitatus assumpsit* for money paid to their use. It seems to follow, that the defendant cannot be liable upon the note.

But the special agreement of the defendant to deliver to the plaintiff the first glass which he should receive from the company, as his indemnity against his endorsement, was exclusively personal ; and if the making and breach of it were proved by competent testimony, there is no ground for disturbing the verdict.

This presents the question whether *Israel Horsefield*, the payee and endorser of the note, was a competent witness to prove that agreement.

It is contended by the defendant's counsel, that *Horsefield* was directly and strongly interested in procuring a recovery by the plaintiff against the defendant, upon this collateral guaranty, because, if he failed to recover against him, he would resort to the witness upon his endorsement. And *Hicks*, not being liable upon the note as maker, the endorsee could not recover over from him. It might, perhaps, be sufficient to say, in reply to this argument, that the company would be liable to the endorser, if *Hicks* was not ; and although it may be inferred from the case, that the company were not in very good credit, it does not appear that they were insolvent. But this question is susceptible of another and more conclusive answer. The plaintiff could not recover against

*Horsefield*, as endorser of this note. Whatever doubt may once have been entertained upon the subject, it is now well settled, that an endorser may make a restrictive endorsement. He may limit the payment to a particular person. (*Burr.* 1226. *Ancher* v. *The Bank of England*, *Doug.* 637. *Chitty on Bills*, 151-2.) He may exempt himself from all liability as endorser, without affecting the negotiability of the note, by specially stating in the endorsement, that it is taken at the risk of the endorsee. (*Rice* v. *Stearns*, 3 *Mass. Rep.* 225.) That the endorser is not in any event to be liable to pay the note, (*Russell* v. *Ball*, 2 *John. Rep.* 50.) That it is taken without recourse to the endorser, (*Wilson* v. *Codman's Executor*, 3 *Cranch*, 193.) In *Rice* v. *Stearns*, the endorsement was in these words : " For value received, I order the contents of this note to be paid to *A. B. at his own risk*." The suit was against the makers of the note, and the endorser was offered as a witness to prove their hand writing, and other facts showing their liability. He was objected to on the ground of interest. Ch. J. *Parsons*, in delivering the opinion of the Court, says, " Upon consideration, we are of opinion, that the promisee, endorsing the note under this express stipulation, is not eventually holden to pay the note, if the maker should not. As the promisee had the property of the note, he might dispose of it on what terms he pleased, with the assent of the purchaser, and the latter cannot complain of the necessary effect of his own agreement ; and the endorser cannot be charged upon his own contract, directly against the express intent of it. The endorser, therefore, had no interest in the event of the suit, and was a competent witness." The endorsement of a note creates a new contract between the parties, and it requires no reasoning to show, that if the endorser can exempt himself from all liability by a special endorsement, he can make that liability depend upon a particular contingency, or restrict it to a particular character, or fund. A bill of exchange, or promissory note, must, as between the drawer and acceptor of the one, and the maker and payee of the other, be absolute and payable

at all events ; not out of any particular fund, or dependent upon any contingency. But when such an instrument is once made, the subsequent parties to it may attach such condition to its transfer as they may think proper. (*Chitty on Bills*, 140.)

Was *Horsefield's* endorsement upon this note conditional or absolute ? There can be no doubt, that it was not the intention of the parties, that either *Hicks* or *Horsefield* should be individually liable upon the note. And this is apparent upon the face of it. It is drawn in the name of *The president and directors of the Woodstock Glass Company*, signed by *Hicks* as *president*, and endorsed by *Horsefield* as *agent*, carrying, upon the face of it, strong, if not conclusive evidence, that it was a company transaction, and that *Hicks* and *Horsefield* acted in their official characters only. It is not necessary for us to determine whether a *bona fide* holder of this note, without notice of the original transaction, could recover upon it against the endorser or not ; though I should be strongly of the opinion that he could not, as enough appears upon the note to put him upon inquiry. But the plaintiff, with a full knowledge of all the facts, most clearly cannot recover against *Horsefield* in his individual character, admitting the company to be bound by the note. Whether, if the contract was not binding upon the company, *Horefield* would be personally responsible (as I have already shown *Hicks* would,) it is not necessary to discuss. I am, therefore, of opinion, that *Horsefield* was a disinterested witness, and was properly admitted by the Judge to prove the guaranty of the defendant.

There is no force in the objection, that if *Horsefield* is not personally responsible as endorser, there is a variance between the note declared upon and that given in evidence. In the count upon the guaranty, upon which the plaintiff must recover, the note is stated merely by way of inducement to, and as explanatory of the special agreement. It is not the contract declared upon. It is mere matter of evidence, and the question of variance cannot arise.

The plaintiff is entitled to recover, not only the amount of the note, but also the damages and costs sustained in con-

sequence of the suit against him. The defendant under-
took to indemnify as far as the glass which he should re-
ceive would go. The evidence justifies the belief, that
the glass received by him exceeded in value the recovery
against the defendant.

Upon the whole case, therefore, I am of opinion,

1. That the note in question is binding upon *The Wood-
stock Glass Company*, and that the defendant, therefore, is
not personally responsible upon it.

2. That he is responsible upon his guaranty, and that
*Horsefield*, the endorser, was a competent witness to prove
the special agreement.

SAVAGE, Ch. J. dissented. (After stating the facts.)
A new trial is asked on two grounds : 1. That *Horsefield*
was not a competent witness; 2. That if admissible, as a
witness, then the evidence does not support the declara-
tion.

It appears to me, that *Horsefield* is liable to the plaintiff
as endorser ; and, consequently, is directly interested,
whether the note be considered that of the company, or
the defendant. It is alleged that he is not interested, be-
cause it was no part of the original understanding that he
was to be liable ; that his endorsement, as *agent*, was a no-
tice to all subsequent holders, that he would be responsible
as *agent* only, and not individually. The facts upon which
this question must be decided, are such as appear in the
case, independent of *Horsefield's* testimony ; and these
shew nothing about the original execution of the note.
*Horsefield*, it is true, signed the endorsement, " *Israel Horse-
field, agent.*" But why *agent ?* *Agent* for whom ? He is
the payee of the note individually, and it does not appear,
except from his own testimony, that he was agent for the
company. They cannot be sued upon this endorsement ;
and no judgment could be rendered against *Horsefield*,
which would bind their property. He is therefore liable
personally, or there is no liability attached to this endorse-
ment. In *Thatcher* v. *Dinsmore*, (5 *Mass. Rep.* 299,) it is
decided that the guardian of an insane person cannot avoid

ALBANY,
October, 1823.

MOTT
v.
HICKS.

responsibility upon a note, signed by him *as guardian.* (*Foster* v. *Fuller,* 6 *Mass. Rep.* 58, S. *P.*) In *Taft* v. *Brewster,* (9 *John. Rep.* 334,) the defendants executed a bond, by the style of " *Trustees of the Baptist Society of the town of Richfield.*" The Court say, the bond is given in their individual capacities ; and the addition of *Trustees, &c.* is a mere description of the persons. (See also, *Wilkes et al.* v. *Back,* 2 *East,* 142. *White* v. *Cuyler,* 6 *T. R.* 176. *Combes' Case,* 9 *Co.* 76, *b. White et al.* v. *Skinner,* 13 *John. Rep.* 307.) I confess, therefore, I can see nothing in the facts of the case, independent of *Horsefield's* testimony, which looks like discharging him from his liability as endorser.

I concur in the answer, which has been given to the argument that this witness was rendered indifferent by a balance of interest, being liable at all events, either to the plaintiff or defendant, the latter of whom, as surety, would be entitled to stand in the place of the former. The very contract relied upon, pre-supposes that the defendant must be put in funds by the company, before any liability could attach to him personally. Being thus paid by the maker, he could never afterwards call upon the endorser.

It then becomes important to enquire whether, independent of *Horsefield's* testimony, there was sufficient evidence before the jury to warrant the verdict. Rejecting the testimony of *Horsefield,* the facts proved are—the making of the note —the recovery upon it against the plaintiff, as endorser—the admission of the defendant, that the plaintiff's inducement to endorse was the agreement, that glass enough should be put into the hands of the latter to indemnify him—and the defendant added that, but for the election of Mr. *Abeel,* as director, the agreement would have been complied with. A further admission was, that the first glass which came down, was to have been thus appropriated ; and that if the defendant had received glass enough for the purpose, he ought to pay the note ; but he at the same time denied that he had received enough. This is the amount of the testimony on the part of the plaintiff, rejecting *Horse-*

*field's ;* and certainly it is not sufficient to sustain either of the counts in the declaration, which go upon the guaranty.

The plaintiff, then, cannot sustain this verdict, unless the defendant is personally liable on the note. He is so, undoubtedly, unless the company is liable. (*Randall* v. *Van Vechten,* 19 *John.* 63, *per Platt, J.* and the cases cited by him.) Formerly it was holden that a corporation could be bound by its corporate seal only. Later adjudications have established a different doctrine ; (*Chitty on Bills,* 20 ; and it is now perfectly well settled, that an action of assumpsit will lie against a corporation upon the simple contract of its authorized agents, when acting within the scope of the legitimate purposes of such incorporation. (*Bank of Columbia* v. *Patterson's Adm'r,* 7 *Cranch,* 306. *Danforth* v. *Schoharie Turnpike Company,* 12 *John.* 227. *Dunn* v. *The Rector, &c. of St. Andrew's Church,* 14 *id.* 118. *Randall* v. *Van Vechten,* 19 *id.* 60.)

Independent of *Horsefield's* testimony, it appears that the note was given by the defendant as president of the *Woodstock Glass Company,* for wood furnished the company in prosecuting the manufacture of glass, the purpose of .the incorporation. The company being liable, even on an *implied* promise, there can be no need of authority to shew that they are equally liable upon an express one—a promissory note. A corporation may give a promissory note, negotiable within the statute of *Ann,* (1 *R. L.* 151 ;) for should it be objected, that this statute is confined to notes when drawn by any *person,* &c. and that corporations are not mentioned, I answer, it has been decided by this Court, that the word *person* includes corporations in a variety of cases ; (15 *John.* 382 ;) and there is no doubt, that upon a fair construction of this act, corporations are included. In my opinion, therefore, this was a good promissory note against the company.

I agree, that if *Horsefield* is to be considered a mere agent, and not liable to the plaintiff at all, he is a competent witness, and his testimony supports the declaration ; for the variance of the word *agent,* added to his name, I do not think material. It might be rejected as surplus-

age. But being liable, I think, as endorser, for aught that appears, independent of his own testimony, he is, of course, an incompetent witness. As the other testimony does not justify the verdict, it ought to be set aside, and a new trial granted, the costs to abide the event of the suit.

*ALBANY,*
*October, 1823..*

Judgment for the plaintiff.