## OLCOTT *v.* THE SUPERVISORS.

1. This court will follow, as of obligation, the decisions of the State courts only on local questions peculiar to themselves, or on questions respecting the construction of their own constitution and laws.

2. Whether or not the construction and maintenance of a railroad owned by a corporation, and constructed and maintained under a statute of a State authorizing such construction, and maintenance, is a matter in which the public has any interest of such a nature as to warrant taxation by a municipal division of the State in aid of it, is not such a question. It is one of general law.

3. If a contract when made was valid under the constitution and laws of a State, as they had been previously expounded by its judicial tribunals, and as they were understood at the time, no subsequent action by the legislature or the judiciary will be regarded by this court as establishing its invalidity.

4. A railroad is a public highway. Being so, and thus a road for public use, a State may impose a tax in furtherance of that use, even though the road itself be built and owned by a private corporation.

5. An act of the legislature of Illinois, authorizing a vote of the people of a particular county upon the question whether they would aid the building of a certain railroad, and if they voted in favor of aiding authorizing the issue of county orders for money to aid in the building, *held*, on an application of the principles just above stated to have been a proper exercise of legislative authority, and the county charged on such orders issued by it, and given to the road by way of donation.

ERROR to the Circuit Court for the Eastern District of Wisconsin; in which court Olcott sued the supervisors of the county of Fond du Lac, Michigan, upon certain county orders issued by the county February the 15th, 1869, in pursuance of an act of Assembly of the State, approved on the 10th of April, 1867, and entitled "An act to authorize the

county of Fond du Lac to aid the completion of the She-
boygan and Fond du Lac Railroad, and to aid the building
of a railroad from the city of Fond du Lac to the city of
Ripon."

This act authorized the people of the county to vote upon
the question whether they would aid the building of the
railroads named; and provided, in case the vote should be
in favor of granting aid, that "county orders" should be
issued as the roads should be completed.    The sixth sec-
tion of the act was thus:

"If, under the provisions of this act, the said county of Fond
du Lac shall furnish the aid contemplated in this act, then the
railroad companies, or their successors and assigns, shall trans-
port wheat upon the said roads upon the following terms for
ten years: Wheat by the car-load from the city of Fond du Lac,
and from stations east thereof within the county of Fond du
Lac, to the city of Sheboygan, at a price not exceeding five
cents per bushel; and from the city of Ripon to the city of She-
boygan, at a price not exceeding seven cents per bushel; and
from all stations between the cities of Fond du Lac and Ripon
to Sheboygan, at a rate *pro rata* with the freight from Fond du
Lac to Sheboygan; and the companies or corporations owning
and building the said roads, their successors and assigns, shall
make such arrangements between themselves as shall give full
effect to the provisions of this section, and the rates of freight
above limited shall also apply to the companies owning or ope-
rating the said roads over and upon all other railroads where
said companies respectively run their cars for the transporta-
tion of freight."

A vote was taken under the act, and was in favor of grant-
ing the aid. The county orders were accordingly issued in
conformity with the act.    They were all made payable to
the Sheboygan and Fond du Lac Railroad Company, or
bearer, and those now sued on had passed, *bonâ fide*, into the
hands of Olcott.

In 1870, that is to say, subsequent to the issue of these
orders, though prior to the trial of this case in the court be-
low, the Supreme Court of the State of Wisconsin, in the

case of *Whiting* v. *Fond du Lac County*,* held this act to be void, upon the ground that the building of a railroad, to be owned and worked by a corporation in the usual way, was not an object in which the public were interested, and therefore that the act in question was void, for the reason that it authorized the levy of a tax for a *private* and not a *public* purpose. The court there said:

"The question is as to the power of the legislature to raise money or to authorize it to be raised, by taxation, for the purpose of donating it to a private corporation. We held, in *Curtis* v. *Whipple*,† that the legislature possessed no such power, and the conclusion in that case we think follows inevitably in this, from the principles stated in the opinion. The cases are not distinguishable, except in the single circumstance that the corporation here, to which it is proposed to give the money, is a railroad company in behalf of which the power of eminent domain has been exercised by the State for the purpose of enabling it to secure the land over which to build its road. . . . But though a railroad company may be, as to its capacity to assume and exercise in the name of the State the power of eminent domain delegated to it, so far a public or *quasi* public corporation, yet in all its other powers, functions, and capacities it is essentially a private corporation, not distinguishable from any other of that name or character. . . . The road, with all its rolling stock, buildings, fixtures, and other property pertaining to it, is private property, owned, operated, and used by the company for the exclusive benefit and advantage of the stockholders. This constitutes a private corporation in the fullest sense of the term. . . . And if we examine any book of authority on the subject,‡ we shall find that such is and always has been the rule of the law as to the corporate character of such companies, notwithstanding the delegation of power of eminent domain, and their consequent subjection in a certain degree to public use and convenience. They are always classed among private corporations, such as banking, insurance, and-manufacturing corporations, and corporations for the building of bridges, turnpikes, canals, &c. . . . Our conclusion, therefore, is that though a rail-

---

* 25 Wisconsin, 188.                    † 24 Wisconsin, 350.

‡ See Angell & Ames on Corporations, § 40.

road company may possess this single exceptional corporate characteristic, it is, nevertheless, essentially a private corpora-, tion, coming fully within the operation of the principles laid down in *Curtis* v. *Whipple*, and that the taxation complained of cannot be sustained."

The court below, in this case, held that decision to be binding upon the Federal courts, and charged that the act under which the orders were issued was void.  Judgment having gone accordingly it was now here for review.

It may here be mentioned that by the constitution of Wisconsin, the legislature of the State has power to alter or repeal charters granted by it.

*Mr. M. H. Carpenter, for the plaintiff in error:*

This case presents two questions:

*First.*  Was the decision of the State court binding upon the court below ?  and,

*Second.*  If not binding, was it correct in principle?

I.  As to the first point.

1.  A leading motive to the adoption of the Constitution was to make the people of all the States one people, for commercial purposes.  This object was secured by two provisions of the Constitution; one providing that no State should make any law impairing the obligation of a contract; the other, that a citizen of one State might sue a citizen of another State in the courts of the Union.  The Constitution was designed to secure results, and whatever defeats the design of the Constitution is unconstitutional.  When the citizen of one State contracts with a citizen of another State, he acquires a constitutional right to have his contract construed and enforced by the Federal courts.  Judicial power is the power to determine what are the rights and duties, respectively, of the parties to a particular litigation growing out of such of their transactions as the case involves; and this power the Constitution confers upon the court and denies to Congress.  The decision must be the result of the opinions and judgment of the judges who pronounce it; and Congress cannot constitutionally say that the courts shall

decide otherwise, nor can the courts decide otherwise with-. out violating their constitutional duty.

The Judiciary Act provides that the laws of the several States shall be regarded as rules of decision in trials at the common law, in the courts of the United States, *"in cases where they apply."* The question is where do they apply? In cases of contract, the law of the State in force when the contract was made forms part of the contract, and must be applied in the Federal courts in construing and enforcing the contract. A decision of the State court, made before the contract, settling the law of the State, is authority in the Federal court, without regard to whether it be sound or unsound in principle, because the parties must be presumed to have contracted with reference to it. But a decision made after the contract was entered into, forms no part of the contract; the parties did not contract with reference to such decision; and to hold it binding upon the Federal courts, is to deny to a foreign creditor his constitutional right to have the conscientious opinion and judgment of Federal judges upon his contract. It would be offensive for the Federal courts to say to the creditor: "You may sue in our courts, if you fear the State courts are prejudiced against your claim; but we must decide as the State courts would, because we are bound by all the decisions they have made since you entered into the contract."

The broad principle ought to be declared by this court, that *no* State court decision affecting the validity of a contract, *made after the contract was entered into*, is conclusive upon the Federal courts. All the decisions in this court are con- sistent with this principle, but the principle itself has not been expressly declared. Yet in no way can injustice to a foreign creditor be prevented but by planting the doctrine upon its proper foundation, and saying that decisions of the State courts pronounced subsequent to the contract are not conclusive upon the Federal courts. If they are, the ma- chinery of a double judiciary, State and Federal, is a mockery and a snare.

2. The decision of the State court is not binding upon the

Federal courts, because it was not declaratory of local law. It was based upon general reasoning, and upon the theory that aiding the construction of a railroad was not an exercise of the power of taxation, but taking the property of A. and giving it to B.

No particular provision of the State constitution or principle of local law was relied upon. The decision, if it be sound, invalidates the similar enactments of every State, and the acts of Congress granting aid to the Pacific Railroads. It is only where some principle of *local* law is declared by a State court that its decisions are binding upon the Federal courts.*

The constitutions of Wisconsin and Illinois are precisely alike in this respect. The Supreme Court of the latter State, since the decision of *Whiting* v. *Fond du Lac County*, has decided a similar case exactly the other way, fully considering the question and rejecting the entire reasoning of the court in Whiting's Case, and holding just such a statute valid under just such a constitution as that of Wisconsin, and enforcing obligations like those sued on in this case.

Now, suppose an action in the Federal court of Wisconsin, and one in the Federal court of Illinois, upon the contracts respectively, and both brought at the same term into this court. This court, if bound by such State decisions, would have to decide one case one way and the other the other way, while in every respect which ought to determine the cases they are identical. This would be a remarkable result to be worked out by the judiciary of a Union established especially to give *uniformity* to commercial law and commercial regulations. Then suppose a case in this court involving the constitutionality of the subsidies granted by Congress in aid of the Pacific Railroad. This court would undoubtedly hold, *for that is the law,* that the building of such a road is a proper work for the government, one in which the whole nation is interested, and that such subsidies are valid. Now, in addition to the humiliation of

---

* Swift v. Tyson, 16 Peters, 19.

three such decisions, reported, perhaps, in the same volume, it would logically result that this court had determined that after a citizen of New York had entered into a contract in Wisconsin with a citizen of that State, which was valid upon *principle*, and was not impugned by any decision of the State court, at the time it was entered into—a contract which the Federal court, a year after it was made, would have held valid—had been annulled and destroyed by a decision of the State court, made long subsequent to the contract, in a case to which the creditor was not a party, of which he had no notice, to which he had never assented, and which was wholly wrong in principle. It is submitted that after this the right of a foreign creditor to sue in a Federal court would not be very valuable.

3. This court has repeatedly decided that if a contract be valid by the law of a State as understood and administered by the different departments of the State government at the time the contract was made, no subsequent change of decisions by the State courts can render it invalid.

Prior to the making of the contracts in suit the State court had repeatedly settled all the principles necessary to sustain the validity of these contracts. That court had held that the power of taxation might constitutionally be exercised in favor of any enterprise in which the public had the *least possible* interest. It did so in *Brodhead* v. *Milwaukee*,* and in *Soens* v. *Racine*.† The constitution of Wisconsin forbids the taking of private property except for a public use; that is, a use in which the *public are interested*. In *Robbins* v. *Railroad*,‡ the court held that land might be taken for a railroad under the right of eminent domain, *because such taking was for a public use*. In *Hasbrouck* v. *Milwaukee*,§ the court sustained a tax to build a harbor on Lake Michigan, at Milwaukee, and based their decision upon the ground that such harbor was as much a matter of public interest as a railroad, and that it was well settled that taxation could be exercised to aid in the construction of a railroad.

---

* 19 Wisconsin, 652.          † 10 Id. 280.
‡ 6 Id. 641.                  § 13 Id. 37.

To show how utterly at war with these decisions, made years before the contracts, is the decision in *Whiting* v. *Fond du Lac County*, holding that taxation in aid of the building of a railroad is not for a public object, and therefore void, let us condense the doctrine of the cases and see how the conclusions agree:

1st. A tax may be authorized by the legislature for any object in which the public have *the least possible interest.*

2d. The right of eminent domain can only be exercised in aid of an object in which the *public have some interest.*

Conclusions:

1st. The power of taxation cannot be exercised in aid of the construction of a railroad, because *the public have no interest in a railroad;* and

2d. The right of eminent domain may be exercised in aid of the construction of a railroad, because *the public have an interest in it.*

The conclusions are obviously such as this court cannot assent to.

II. As to the second point. The decision of the State court in *Whiting* v. *Fond du Lac County* was erroneous.

1. Railroads are public highways. Upon no other ground can the right of eminent domain in favor of a railroad company, be vindicated. Therefore every decision sustaining this right, is an authority in favor of the power to raise money by taxation for that purpose; and such decisions have been made by all American courts, State and National.

2. There is no constitutional objection to raising money to give it as a donation to a railroad company, under the circumstances of this case, which do not exist to an act authorizing the municipalities to subscribe for stock and pay by taxation. Now, the Supreme Court of Wisconsin has decided in two cases,* never reversed, that such aid might be given.

---

* Clark *v.* Janesville, 10 Wisconsin, 136; and Bushnell *v.* Beloit, Ib. 195; and in several subsequent cases.

3. The building of roads as a means of facilitating commerce, is a proper work of government; a subject clearly within the legislative power, and has been so regarded in every civilized nation from early times. The sixth section of the charter of this particular road tended directly to a public benefit.

*Messrs. I. C. Sloan and J. R. Bennett, contra:*

I. The question below arose upon an act of the legislature of Wisconsin; an act in its nature a private act. Now the highest court of Wisconsin had interpreted that act; had declared its meaning and effect. It had declared that the act authorized the levy of a public tax for a private purpose; in other words, that it took private property without compensation for a public purpose. Certainly this is an interpretation of a State act by the State court. And it is the established doctrine of this court that it will adopt and follow the decisions of the State courts in the construction of their own State constitutions, and statutes passed in pursuance of them, when that construction has been settled by the highest judicial tribunal of the State. *Primâ facie*, then, the Circuit Court did right to respect it.

Mr. Carpenter would argue that *no* decision—apparently, not even one by the highest court of the State, confessedly upon its own constitution and laws, and though not opposed to prior decisions in the State—should be regarded by this court if made *after* a contract has been entered into by a foreigner. But the risk of a decision upon an *uninter-preted* State constitution or law is what a foreigner may be as well asked to take as a citizen.

Mr. Carpenter, however, relies on four cases to show that the decision in *Whiting* v. *Fond du Lac County* was opposed to former ones. But what do they decide?

*Brodhead* v. *Milwaukee* decided that a State legislature might authorize a municipal corporation to raise money by taxation for bounty to volunteers to suppress an insurrection against the lawful government; in other words, per-

haps, to repel a public enemy entering its own gates from sacking and burning it, and killing its citizens.

*Soens* v. *Racine* decided that the citizens of Racine were rightly taxed to improve a breakwater, which it was necessary to improve in order to stay the action of the waters of a lake and preserve the very soil of the city, and of course the buildings on it, from being washed away.

In *Robbins* v. *Railroad* it was held that private property might be taken by a railroad for its roadbed under an exercise of the power of eminent domain delegated by the State, and, of course, on compensation being made.

In *Hasbrouck* v. *Milwaukee* the citizens of Milwaukee were taxed to improve a harbor which the city, that is to say, which they themselves in their municipal capacity owned.

These were all cases of taxation for the direct and immediate benefit of the public.

The courts which decided them doubtless in their *opinions* used some general language; but this is but *dictum*. What were the facts? What were *the cases?* What the judgments? These, when the adjudications are cited for precedents, are the lawyer-like and pertinent inquiries. It will not do to sever the language of the court-from the facts of the case before it, and to attempt to apply it to a different state of facts; facts where the object of the tax is to promote strictly individual, and to add to or to enhance the value of merely private, property. And particularly is this unallowable, when the power to tax for any private purpose was expressly denied in the opinions.

Still, therefore, *Whiting* v. *Fond du Lac County* was rightly held obligatory independently of its own merits. If so this case is ended.

II. But if it did not bind the Circuit Court technically it was correct in principle.

Cases are cited on the other side which decide that acts of legislature authorizing municipal corporations to subscribe for stock, and pay by taxation, are valid. But since, as before those decisions, the legality of permitting such corporations

to engage in making railroads has been denied by the ablest jurists in this country, including notably Mr. Redfield;* and when this power has been sustained in courts by the decisions, it has generally been by a much-divided court. But whether right or wrong is unimportant, for in *Whiting* v. *Fond du Lac County* the court was asked to go much further, and to hold that counties and towns might be taxed to pay for the stock subscribed for *by others*. It was asked to declare that the State might compel the people to make a *donation* to railroads in which they have no interest; that the State, under the taxing power, might transfer A.'s money to B. without an equivalent. Such an act is in violation of all our State constitutions, and of natural justice. The Supreme Court of Wisconsin declined to take this step, and held that it was unlawful to tax the people for such a purpose. And this appeal is brought to have this court in effect *reverse* that decision. We trust that it will not be reversed. It is maintained by weighty arguments given in the report of it. And the judgment of the court has been supported by the reasoning of the Supreme Court of Michigan in *Ex rel. Howell* v. *Town Board of Salem*.† The leading opinion in this case is delivered by Cooley, J., whose name is familiar in this court by his oft-cited and valuable work on Constitutional Limitations, and who has acquired a national reputation for learning and ability as a constitutional lawyer. We refer to his opinion at large as our best argument.

Mr. Justice STRONG delivered the opinion of the court.

Whether the act of Assembly of the State of Wisconsin, approved April 10th, 1867, under which the county orders or promissory notes sued upon, in this case, were issued, was a lawful exercise of constitutional power, is the only question in the case. In the court below, the jury was instructed, in substance, that the issue of the orders was unauthorized and void, and that the act of Assembly, above referred to, was an unconstitutional exercise of legislative

---

* 2 Law of Railways, p. 398, note 2.          † 20 Michigan, 452.

power.  No other question was made at the trial, and no other is now presented to us for our determination.

: At the outset we are met by the fact that the Supreme Court of the State has decided the act was unauthorized by the constitution. · It was thus ruled in *Whiting* v. *Fond du Lac County.*  If that decision is binding upon the Federal courts, if it has established a rule which we are under obligations to follow, the matter is settled.

· It is undoubtedly true in general, that this court does follow the decisions of the highest courts of the States respecting local questions peculiar to themselves, or respecting the construction of their own constitutions and laws. But it must be kept in mind that it is only decisions upon local questions, those which are peculiar to the several States, or adjudications upon the meaning of the constitution or statutes of a State, which the Federal courts adopt as rules for their own judgments. That *Whiting* v. *Fond du Lac County* was not a determination of any question of local law, is manifest. It is not claimed to have been that. But it is relied upon as having given a construction to the constitution of the State. Very plainly, however, such was not its character or effect. The question considered by the court was not one of interpretation or construction. The meaning of no provision of the State constitution was considered or declared. What was considered was the uses for which taxation generally, taxation by any government, might be authorized, and particularly whether the construction and maintenance of a railroad, owned by a corporation, is a matter of public concern. · It was asserted (what nobody doubts), that the taxing power of a State extends no farther than to raise money for a public use, as distinguished from private, or to accomplish some end public in its nature, and it was decided that building a railroad, if it be constructed and owned by a corporation, though built by authority of the State, is not a matter in which the public has any interest, of such a nature as to warrant taxation in its aid.

---

* 25 Wisconsin, 188.

For this reason it was held that the State had no power to authorize the imposition of taxes to aid in the construction of such a railroad, and therefore that the statute giving Fond du Lac County power to extend such aid was invalid. This was a determination of no local question, or question of statutory or constitutional construction. It was not decided that the legislature had not general legislative power; or that it might not impose or authorize the imposition of taxes for any public use. Now, whether a use is public or private is not a question of constitutional construction. It is a question of general law. It has as much reference to the constitution of any other State as it has to the State of Wisconsin. Its solution must be sought not in the decisions of any single State tribunal, but in general principles common to all courts. The nature of taxation, what uses are public and what are private, and the extent of unrestricted legislative power, are matters which, like questions of commercial law, no State court can conclusively determine for us. This consideration alone satisfies our minds that *Whiting v. Fond du Lac County* furnishes no rule which should control our judgment, though the case is undoubtedly entitled to great respect.

There is another consideration that leads directly to the same conclusion. This court has always ruled that if a contract when made was valid under the constitution and laws of a State, as they had been previously expounded by its judicial tribunals, and as they were understood at the time, no subsequent action by the legislature or the judiciary will be regarded by this court as establishing its invalidity.* Such a rule is based upon the highest principles of justice. Parties have a right to contract, and they do contract in view of the law as declared to them when their engagements are formed. Nothing can justify us in holding them to any other rule. If, then, the doctrine asserted in *Whiting* v. *Fond du Lac County* is inconsistent with what was the recognized

---

* Havemeyer *v.* Iowa City, 3 Wallace, 294; Gelpcke *v.* The City of Dubuque, 1 Id. 175; Ohio Life and Trust Company *v.* Debolt, 16 Howard, 432.

law of the State when the county orders were issued, we are under no obligation to accept it and apply it to this case. The orders were issued in February, 1869, and it was not until 1870 that the Supreme Court of the State decided that the uses for which taxation was authorized by the statute of April 10th, 1867, were not public uses, and therefore that the statute was invalid.    Prior to 1870 it seems to have been as well settled in Wisconsin as elsewhere that the construction of a railway was a matter of public concern, and not the less so because done by a private corporation.    That the State might itself make such an improvement, and impose taxes to defray the cost, or exercise its right of eminent domain therefor, was beyond question.    Yet confessedly it could neither take property or tax for such a purpose, unless the use for which the property was taken or the tax collected was a public one.    And it was also the undoubted law of the State that building a railroad or a canal by an incorporated company was an act done for a public use, and thus the power of the legislature to delegate to such a company the State right of eminent domain was justified.    In *Pratt v. Brown*,* it was said by the Supreme Court of the State that the incorporation of companies for the purpose of constructing railroads or canals affords the best illustration of the delegation of power to exercise the right of eminent domain, by the condemnation and seizure of private property for public use upon making just compensation therefor.    It is admitted that the only principle upon which such delegation of power can be justified is that the property taken by these companies is taken for the public use.    Similar language was used and a decision to the same effect was made in *Robbins* v. *The Railroad Company*.†    In *Hasbrouck* v. *Milwaukee*,‡ a case where the right to tax for the improvement of a harbor was under consideration, the court used this significant language:

"The power of municipal corporations, when authorized by the legislature to engage in works of internal improve-

---

* 3 Wisconsin, 612.          † 6 Id. 641.          ‡ 13 Id. 37.

ment, SUCH AS THE BUILDING OF RAILROADS, canals, harbors, and the like, or to loan their credit in aid thereof, and to defray the expenses of such improvements, MAKE GOOD THEIR PLEDGES *by an exercise of the power of taxing the persons and property of their citizens, has always been sustained on the ground that such works, although they are in general operated and controlled by private corporations, are nevertheless, by reason of the facilities which they afford for trade, commerce, and intercommunication between different and distant portions of the country, indispensable to the public interests and public functions.* It was originally supposed that they would add, *and subsequent experience demonstrated that they have added vastly, and almost immeasurably, to the general business, the commercial prosperity, and the pecuniary resources of the inhabitants of cities, towns, villages, and rural districts through which they pass, and with which they are connected.* It is, in view of these results, *the public good thus produced,* and *the benefits thus conferred* upon the persons and property of all the individuals composing the community, that courts have been able to pronounce them *matters of public concern,* for the accomplishment of which *the taxing power might lawfully be called into action.* It is in this sense that they are said to fall so far within the purposes for which municipal corporations are created, that such corporations may engage in, or pledge their credit for their construction."

So also in *Soens* v. *Racire,*[*] where the validity of a law authorizing a local tax to secure the lake shore was in question, the court discussed at length the nature of a public use for which taxation was lawful, and ruled that the use was a public one though only the property of some inhabitants of the city was saved, remarking that to determine whether a matter is a public or merely private concern we have not to determine whether or not the interests of some individuals will be directly promoted, but whether those of the whole or the greater part of the community will be. And again, in *Brodhead* v. *Milwaukee,*[†] the court said :

---

[*] 10 Wisconsin, 280.

[†] 19 Id. 652; see also Clark *v.* Janesville, 10 Id. 136; and Bushnell *v.* Beloit, Ib. 195.

" The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot, in the form of a tax, take the money of the citizen and give it to an individual, *the public interest or welfare being in no way connected with the transaction.* The objects for which the money is raised by taxation must be public, and such as subserve the common interest and wellbeing of the community required to contribute. . . . To justify the court in arresting the proceedings and declaring the tax void, the absence of *all possible* public interest in the purposes for which the funds are raised must be clear and palpable; *so clear and palpable as to be perceptible by every mind* AT THE FIRST BLUSH."

All these expositions of the law of the State were made by its highest court before the county orders now in suit were issued. They certainly did assert that building a railroad, whether built by the State or by a corporation created by the State for the purpose, was a matter of public concern, and that because it was a public use, the right of eminent domain might be exerted or delegated for it, and taxation might be authorized for its aid. It was the declared law of the State, therefore, when the bonds now in suit were issued, that the uses of railroads, though built by private corporations, were public uses, such as warranted the exercise of the public right of eminent domain in their aid, and also the power of taxation.

We are not, then, concluded by a decision, made in 1870, that such public uses are not of a nature to justify the imposition of taxes. We are at liberty to inquire what are public uses, and what restrictions, if any, are imposed upon the State's taxing power.

It is not claimed that the constitution of Wisconsin contains any *express* denial of power in the legislature to authorize municipal corporations to aid in the construction of railroads, or to impose taxes for that purpose. The entire legislative power of the State is confessedly vested in the General Assembly. An implied inhibition only is asserted.

It is insisted that, as the State cannot itself impose taxes for any other than a public use, so the legislature cannot empower a municipal division of the State to levy and collect taxes for any other than such a use, and it is denied that taxation to enable the county of Fond du Lac to aid in the completion of the Sheboygan and Fond du Lac Railroad is taxation for a public use. No one contends that the power of a State to tax, or to authorize taxation, is not limited by the uses to which the proceeds may be devoted. Undoubtedly taxes may not be laid for a private use. But is the construction of a railroad by a company incorporated by a State for the purpose of building it, and endowed with the State's right of eminent domain, a thing in which the State has, as such, no interest? That the legislature of Wisconsin may alter or repeal the charter granted to the Sheboygan and Fond du Lac Railroad Company is certain. This is a power reserved by the constitution. The railroad can, therefore, be controlled and regulated by the State. Its use can be defined; its tolls and rates for transportation may be limited. Is a work made by authority of the State, subject thus to its regulation, and having for its object an increase of public convenience, to be regarded as ordinary private property?

That railroads, though constructed by private corporations and owned by them, are public highways, has been the doctrine of nearly all the courts ever since such conveniences for passage and transportation have had any existence. Very early the question arose whether a State's right of eminent domain could be exercised by a private corporation created for the purpose of constructing a railroad. Clearly it could not, unless taking land for such a purpose by such an agency is taking land for public use. The right of eminent domain nowhere justifies taking property for a private use. Yet it is a doctrine universally accepted that a State legislature may authorize a private corporation to take land for the construction of such a road, making compensation to the owner. What else does this doctrine mean if not that building a railroad, though it be

built by a private corporation, is an act done for a public use? And the reason why the use has always been held a public one is that such a road is a highway, whether made by the government itself or by the agency of corporate bodies, or even by individuals when they obtain their power to construct it from legislative grant. It would be useless to cite the numerous decisions to this effect which have been made in the State courts. We may, however, refer to two or three which exhibit fully not only the doctrine itself, but the reasons upon which it rests.*

Whether the use of a railroad is a public or a private one depends in no measure upon the question who constructed it or who owns it. It has never been considered a matter of any importance that the road was built by the agency of a private corporation. No matter who is the agent, the function performed is that of the State. Though the ownership is private the use is public. So turnpikes, bridges, ferries, and canals, although made by individuals under public grants, or by companies, are regarded as *publici juris.* The right to exact tolls or charge freights is granted for a service to the public. The owners may be private companies, but they are compellable to permit the public to use their works in the manner in which such works can be used.† That all persons may not put their own cars upon the road, and use their own motive power, has no bearing upon the question whether the road is a public highway. It bears only upon the mode of use, of which the legislature is the exclusive judge.‡

It is unnecessary, however, to pursue this branch of the inquiry further, for it is not seriously denied that a railroad, though constructed and owned by a private corporation, is a matter of public concern, and that its uses are so far public that the right of eminent domain of the State may be ex-

---

* Beekman *v.* The Saratoga and Schenectady Railroad Co., 3 Paige, 45; Bloodgood *v.* The Mohawk and Hudson Railroad Co., 18 Wendell, 1; Worcester *v.* Railroad Co., 4 Metcalf, 564.

† Charles River Bridge Co. *v.* Warren, 7 Pickering, 495.

‡ Cooley's Constitutional Limitations.

erted to facilitate its construction. But it is contended that though the purpose and the use may be public, sufficiently to justify taking private property, they are not public when the right to impose taxes is asserted. It is argued that there are differences between the power of taxation and the power of taking private property for a public use, and that because of these differences it does not follow that wherever the one power may be exerted the other can. We do not care to inquire whether this is so or not. The question now is whether if a railroad, built and owned by a private corporation, is for a public use, because it is a highway, taxes may not be imposed in furtherance of that use. If there be any purpose for which taxation would seem to be legitimate it is the making and maintenance of highways. They have always been governmental affairs, and it has ever been recognized as one of the most important duties of the State to provide and care for them. Taxation for such uses has been immemorially imposed. When, therefore, it is settled that a railroad is a highway for public uses, there can be no substantial reason why the power of the State to tax may not be exerted in its behalf. It is said that railroads are not public highways *per se;* that they are only declared such by the decisions of the courts, and that they have been declared public only with respect to the power of eminent domain. This is a mistake. In their very nature they are public highways. It needed no decision of courts to make them such. True they must be used in a peculiar manner, and under certain restrictions; but they are facilities for passage and transportation afforded to the public, of which the public has a right to avail itself. As well might it be said a turnpike is a highway, only because declared such by judicial decision. A railroad built by a State no one claims would be anything else than a public highway, justifying taxation for its construction and maintenance, though it could be no more open to public use than is a road built and owned by a corporation. Yet it is the purpose and the uses of a work which determine its character. And if the purpose is one for which the State may properly levy a tax

upon its citizens at large, its legislature has the power to apportion and impose the duty, or confer the power of assuming it upon the municipal divisions of the State.* And surely it cannot be maintained that ownership by the public, or by the State, of the thing in behalf of which taxation is imposed, is necessary to justify the imposition. There are many acknowledged public uses that have no relation to ownership. Indeed, most public expenditures are for purposes apart from any proprietorship of the State. A public use may, indeed, consist in the possession, occupation, and enjoyment of property by the public, or agents of the public, but it is not necessarily so. Even in regard to common roads, generally, the public has no ownership of the soil, no right of possession, or occupation. It has a mere right of passage. While, then, it may be true that ownership of property may sometimes bear upon the question whether the uses of the property are public, it is not the test.

The argument most earnestly urged against the constitutionality of the act is that it attempted to authorize Fond du Lac County to assist the railroad company by a donation. It is stoutly contended that the legislature could not authorize the county to impose taxes to enable it to make a donation in aid of the construction of the railroad, even if its ultimate uses are public. But why not? If the county can be empowered to aid the work because it is a public use, what difference can it make in what mode the aid be extended? It is conceded that in Wisconsin municipal corporations may be authorized to become subscribers to the stock of private railroad companies, and to raise money by taxation to meet bonds given in payment of the subscriptions. This has been decided by the highest court of the State.† And the reasons given for the decision are, not that the municipal bodies acquired property rights by their subscriptions, or that they thereby obtained partial control of the railroad companies, but that subscriptions to the stock were

---

* Cooley's Constitutional Limitations, 262.

† Clark *v.* Janesville, 10 Wisconsin, 136; Bushnell *v.* Beloit, Ib. 195.

a mode of aiding a work in which the public had an interest, a work of such a nature that it might properly be aided by taxation. Never was the right to tax supposed to rest in any degree upon anything else. Whether the stock had value or not was not even considered. Equally with the taxation, the municipal subscription could be justified only because it was for a public use. If taxation is invalid because laid for a private use, the nature of the use cannot be changed by receiving stock for the money raised. There is no substantial difference in principle between aid given to a railroad company by subscription to its stock and aid given by donations of money or land. The burden upon the county may be the same in whichever mode the aid is given, and the uses promoted are precisely the same. And the courts have never attempted to make any distinction in the cases; certainly not until the case of *Whiting* v. *Fond du Lac County*, and even then no real difference is shown. On the other hand, the power to tax for the purpose of making donations in aid of railroads built by private corporations has been affirmed.* We have, however, considered this subject in the case of the *Railroad Co*. v. *County of Otoe*,† and nothing more need now be said. What we have already remarked is sufficient to show that in our opinion the act of the legislature of Wisconsin, approved April 10th, 1867, was a constitutional exercise of legislative power, and consequently that the Circuit Court erred in instructing the jury that it was unconstitutional and void, and in directing a verdict for the defendants.

JUDGMENT REVERSED, and the record remitted, with instructions to award

A VENIRE DE NOVO.

The CHIEF JUSTICE, Mr. Justice MILLER, and Mr. Justice DAVIS dissented from the preceding opinion.

---

\* Gibbons *v.* Mobile and Great Northern Railroad Co., 36 Alabama, 410; Davidson et al. *v.* Commissioners of Ramsay County, Minnesota.

† *Suprà*, p. 675.