Taylor *v.* Lambertville.

## Bryan Taylor et al.

*v.*

## The Common Council of the City of Lambertville et al.

The common council of Lambertville had, at different times and at irregular intervals, contracted with a gas company, which had erected works for that purpose, to pay the company certain prices for gas to be supplied by it to the city for lighting its streets. These contracts were in writing and were to run for the period of one year, but they were seldom renewed in writing at the expiration of the year; two years would at times elapse before a new contract in writing would be entered into, during which period the gas company would furnish gas and the city pay therefor according to the terms of the last written contract; all of which was continued for about twenty years. The last contract in writing was made in 1884 and expired in 1885, from which last date the terms of the said last contract have been observed by each party until January, 1887, when the common council attempted to make a contract with another company, to commence and take effect February 1st then next, before the expiration of a year from the time when the contract between the city and the gas company, whether in writing or not, had commenced to run for another year.—*Held,* that the common council having for so long a period, from time to time, recognized its obligation to pay for gas furnished according to the terms of the last contract in writing, although that contract had expired, an implied obligation is imposed on it to pay for gas on the same terms for an entire year, when it accepts gas for any considerable portion of the year; and held also, that a contract with any other company to furnish gas for the same time or any portion thereof is void, and its enforcement will be enjoined.—*Held,* that in such case an ordinance is essential to the validity of any contract, and that the words "rules, regulations and by-laws" are only intended to give the power to common council to point out the manner in detail by which the ordinance shall be carried out; but if this be not so, then it is held that the words are of equal import with the word "ordinance," and require a like degree of solemnity and form of action by the city authorities.— *Held,* likewise, that the common council cannot, in such case, bind the city for a period of five years; and held, that if in such case the authorities may proceed under the law of 1886, "by ordinance *or* resolution," they must not only adopt the one method or the other, but having so adopted the one or the other they must pursue it faithfully; and hence, if they resolve to advertise for bids in four papers it will not suffice if they advertise in only one.

Mr. *Charles A. Skillman* and Mr. *John H. Stewart,* for the complainants.

*Mr. Woodbury D. Holt* and *Mr. L. H. Sergeant,* for the defendants.

BIRD, V. C.

In the year 1856, the common council of the city of Lambertville, as it lawfully might, passed an ordinance authorizing a contract with the Lambertville Gas Light Company to furnish the city with gas. A contract was entered into between the city and the said gas company accordingly; and from time to time new contracts were made between the city and the said gas company until the year 1884, when the last contract was made. These contracts were in writing, and were each for the period of one year; but were not renewed in writing every year. although the gas company continued from year to year to furnish gas to the city, and the city to pay therefor, according to the terms of the last written contract, until a new one was made. In the year 1884, the last written contract was entered into. The gas company furnished gas to the city and was paid for it during the next year, which ended on the 1st of October, 1885. From the close of the last-named year until December, 1886, the gas company continued to furnish the city with gas and to receive pay therefor on the same terms it had been paid under the last written contract. At the end of one of the periods fixed by the written contract for the payment, the gas company sought to increase the amount which they were to receive by the written contract, and presented a bill, accordingly, to the common council, which was rejected by the council, and the bill was then modified by the gas company, when it was paid according to the written contract which had been entered into in 1884. In December, 1886, the common council passed a resolution, naming a committee of three, and directing advertisements to be made by them in one New York city paper, in the Trenton "True American," and in both of the papers in the city of Lambertville, for proposals to light the city. The advertisement was published in the Trenton "True American," only. No time was fixed by the resolution, or by any notice, within which bids should be presented. Two offers to light the city were sent in, one by the Pennsylvania

Globe Gas Light Company, and one by a New York Gas Light company, which, although passing under a different name, was in reality, a representative of the former corporation. Of course one bid was higher than the other.

On January 13th, 1887, a meeting of the common council was held, at which was present an agent of the Pennsylvania Globe Gas Light Company. A committee of three was appointed by the common council, and was authorized to contract with the last-named company to light the city. The next day a contract was entered into, signed by two of the said committee, by which it was agreed that the said company would light the city for five years from February first, then next ensuing.

The complainants, who are residents in the said city and taxpayers, ask to have the performance of this contract enjoined. First, it is claimed that the common council could not enter into such a contract to commence and take effect during the continuance of the contract previously made with the Lambertville Gas Light Company. Hence the inquiry whether or not there was a valid contract between the city and the Lambertville Gas Light Company which continued to run for some time after the commencement of the obligation on the part of the Pennsylvania Globe Gas Light Company to furnish light. In other words, was the Lambertville Gas Light Company bound to furnish gas and was the city bound to pay? As stated, a lawful bargain in writing between the city and the Lambertville Gas Light Company was made in 1884 ; the latter to furnish gas and the former to pay for it at a price agreed upon. From that period until February 14th, 1887, the city has been supplied with gas by the same company. For that purpose they made out contracts in writing covering the period of a year. The town renewed the contract every year, but the gas was furnished and paid for according to the terms of the last written contract, whatever space elapsed after the expiration of the said written contract and the formation of a new one. And in like manner, more than a year had passed after the last written contract was made before the effort of the common council to procure a contract with other parties ; and after the expiration of such year,

the Lambertville Gas Light Company continued to furnish gas and the city to receive and pay therefor upon the same terms that it had done during the year that the last written contract was in force. It is true, as before stated, that for one quarter the gas company wanted an advance for gas, but the city authorities refused to make any such advance, and the bill was settled, as former ones had been for some time past, according to the written contract. The city did not give any notice to the Lambertville Gas Light Company of the termination of the contract, or of its intention to advertise for bidders to light the city with gas, although the Lambertville Gas Light Company had constructed its works and made ample preparations for effecting the object of such an institution. I think these facts show an enforcible contract existing between the city and the Lambertville Gas Light Company—that the one was bound to furnish gas during the entire year after it had once commenced so to do and the other party had once commenced so to receive, and having commenced so to receive, the gas company was bound to accept the pay for it upon the terms of the last contract in writing, neither one having given the other notice to the contrary. What else is to be expected or claimed within reason, after each had encouraged the other for so long a period of time? Would it be equitable in any sense to allow either to stop without notice to the other, under such circumstances, at any period of time short of a year —a period which they had so often and so unmistakably acknowledged in every previous transaction respecting this matter? That corporations are subject to such deductions or implications of law is plain from all the authorities. I do not say that the cases go so far as to settle the question now before me; but if anything is to be derived from the consideration of principles, then I am clear in my mind that I am sustained by what has been passed upon by the most eminent judges. See *Dillon on Mun. Corp.* § *375, and cases cited;* § *383, and cases cited,* showing this to have been the opinion of Chancellor Kent. See also *Bank of Columbia* v. *Patterson, 7 Cranch 299; Mott* v. *Hicks, 1 Cow. 513, 532.* In the last case the language is, "The great convenience of such a rule—indeed, the necessity in some cases, to

Taylor v. Lambertville.

prevent the failure of justice, will not be doubted." How can justice be done in this case unless it be determined that the city had already contracted with the Lambertville Gas Light Company to light the city for another year from October 1st, 1886? If I am correct in the foregoing conclusions, then, of course, the contract with the Pennsylvania Globe Gas Light Company cannot stand, since I presume that no one will insist that it will be within the range of reason or public policy for the city authorities to make two contracts with two different parties to furnish the same light for the same time, and by the same lamps, or by lamps located at the same places; all of which is contemplated by the contract with the Pennsylvania company.

In the second place it is said that the act of the common council is void because the council did not pass an ordinance. If the fair construction of the charter requires an ordinance, then the act of the council is void. *Cross v. Morristown, 3 C. E. Gr. 305.* We must appeal to the charter. The twenty-first section provides that the common council shall have power within the same town to make, establish, publish and modify, amend or repeal ordinances, rules, regulations and by-laws for the following purposes (naming a great many), amongst which is one respecting the lighting of the streets, in these words: "To provide lamp and gas fixtures, and to light the streets, parks and public places of every description in said town." Now, what is the fair interpretation of the words "ordinances, rules, regulations and by-laws?" Can it safely be said that the legislature meant that the common council could proceed by ordinance, rule, regulation or by-law? This certainly cannot hold good as a universal proposition. I very much doubt if any one would contend that by "by-laws" the legislature meant to grant a power to create—to grant something new and independent for the welfare of the city. It certainly impresses me most strongly that in this sense a by-law is to be understood as the means by which something that is already instituted or declared is to be accomplished. It is a pointing out of the method or the steps beforehand by which the city authorities shall carry out what they have, by more solemn ordinance, already declared should

be done. And I think this reasoning applies with particular force to the word "regulate." Certainly the word "regulate" does not mean to create or to ordain. And what are "rules," in parliamentary language, but devices in words and phrases for the control and direction of those who have something else given them to do? They are intended to control in doing those public affairs which are infinitely more important than the rule itself.

It may be said, and possibly under the construction which has heretofore been given to these questions by the most able and competent judges and text writers, that the view just expressed is too limited. Mr. Dillon, who has given these questions careful consideration, seems inclined to the opinion that while the legislature sometimes uses the word "ordinance" to indicate all the power necessary to carry on a municipal government, at other times the phrase "by-laws" is used in the same sense and to the same extent or amplitude. *Mun. Corp.* § *244*. I think this is also the plain inference from the reasoning of Chief-Justice Shaw (*Commonwealth* v. *Turner, 1 Cush. 493*), and I believe that this is the strong bent of Mr. Justice Dixon's mind, from observations in *Hunt* v. *Lambertville, 16 Vr. 279-282*, when speaking of the section now before me for construction. Therefore, it seems to follow that, if my reasoning with respect to the right use or application of the words "rules, regulations and by-laws" in this charter be fallacious, I will be still obliged to adopt a view which leads to the same end, namely, that they are words of no less import, and are intended to carry with them the same obligation or duty as the word "ordinance." This being so, the same formality or solemnity should be observed in passing them as are required to be observed in passing an ordinance. And when passed, their provisions must be observed with equal solicitude.

Again, it is urged that if the former objections to the action of the council be well founded as the law of the city stood prior to 1886, they are all removed or overcome by the act of the legislature of that year (*P. L. of 1886 p. 389*), which provides "that it shall hereafter be lawful for the common council or other municipal

authorities of any city, from time to time, and by *ordinance or resolution*, to order and cause any public street or streets, place or places, or any parts thereof, in any city, to be lighted, with gas or otherwise, and for that purpose to erect and maintain &c., and to make and to enter into any contract or contracts with any other party or parties in relation to the same, and to cause the annual expense thereof, after having been ascertained or determined by a resolution of said council, to be certified unto the treasurer or assessors &c., and that such annual expense shall thereupon be levied &c. in the same manner as the taxes for the working or repairing of roads or streets." The second section provides "that any act or acts, or any part or parts thereof, inconsistent with the provisions of this act, is and are hereby repealed in so far as it or they is or are inconsistent herewith," and that "this act is hereby declared to be a public act and shall take effect immediately." The language of this act is that the work to be accomplished may be initiated by *ordinance or resolution*. The common council must pass or adopt the one or the other. This, unquestionably, is imperative. By the one or the other it must proceed. It cannot proceed without first committing itself to the record as to the method, and in this particular comes the claim on the part of the council that they adopted a resolution, and that that is in compliance with the law of 1886. Suppose this act to be a protection to the common council to that extent. As I understand the proofs, and as was admitted on the argument, the method directed by the resolution was abandoned by the committee appointed to carry it into effect, in that they only caused the required notice to be published in one paper, instead of in an additional one in the city of New York and the two papers in the city of Lambertville. It seems to me that it does not require much reasoning to one who is conversant with the strict rules of interpretation applicable to such cases, to come to the conclusion that the city authorities could not in such a case prescribe how a matter so important was to be accomplished, and then allow it to be accomplished in total disregard of the method so prescribed. Plainly, if an ordinance or a resolution be required, it is for a definite purpose. It is to have the effect of a law to those to

Taylor v. Lambertville.

whom it is directed. It is intended that it shall be observed. Plainly, if an ordinance or a resolution in such case may be totally disregarded in matters so essential, then the city authorities may disregard their ordinances and resolutions in every other case, and the requirements of their charters be set at naught by them, and cities ruled according to the present will of a common council.

It will be seen that I am not insisting that, in the first place, it was necessary for them to appoint a committee directing them to advertise. It will also be seen that I am not insisting that it was necessary for them to solicit bidders with a view of making the most favorable contract for the benefit of the city; nor will it be seen that I am pressing the view that the common council could not, in any event, contract without first soliciting bidders, with the view of accepting the lowest or most favorable bid. I am only pressing the conviction that the common council, under the statute, is bound by its own resolution; having prescribed the way in which the work in view shall be accomplished, they cannot depart therefrom so long as the way so prescribed remains in full force. My conclusion is, that in departing from the details prescribed by this resolution, and in entering into a contract irrespective of those details, the common council committed an error, and the contract is nugatory.

Again, it is insisted, upon the part of the complainants, that this contract, having been entered into for the period of five years, is against public policy, and therefore void. The view that in such matters one common council cannot bind another, cannot impose burdens for the future, is earnestly impressed upon the attention of the court. In support of this doctrine, *2 Dillon on Mun. Corp. (3d ed.)* § *692* is cited; §§ *97, 696* also; *State of Ohio, ex rel. Atty-Gen.* v. *Cincinnati Gas Light and Coke Co., 18 Ohio St. 262, 294; Richmond Gas Light Co.* v. *Middletown, 59 N. Y. 228.* In this case the contract was for five years. This case throws some light upon the subject. The law provided that whenever the board of town auditors deemed it necessary to have any of the streets lighted, to contract with the complainant for furnishing and laying down the necessary gas-

Taylor v. Lambertville.

pipes and for furnishing posts and appliances. Under this authority the contract sued upon was entered into, which, among other things, provided for the furnishing of gas by the complainant and the lighting of certain streets of the defendant for the term of five years. This act was unconditionally repealed. The action was brought by the complainant to recover for gas furnished after such repeal. The first inquiry obviously is, says the court, whether this contract was valid for the five years. If it was, neither the legislature, nor the board of town auditors of the defendant could do anything to impair its obligation, as that would come within the prohibition of the constitution of the United States. *Van Hoffman* v. *City of Quincy, 4 Wall. 535;* also cases cited in opinion of Strong, Justice, in *Olcott* v. *Supervisors, 16 Wall. 678.* The court further says: "The defendant was a municipal corporation created by law for certain local governmental purposes, authorized to exercise such powers only as were conferred upon it by law. Prior to the passage of the act of 1865, it had no power to cause any of the streets of the town to be lighted with gas, or in any other way. By that act such power was conferred upon the defendant. For what term? The learned counsel for the appellant insists for the term of five years, at least, for which the contract was entered into by the plaintiff with the town auditors to furnish the gas, and that during this time the legislature had no power to relieve the town or any part of it from the expense of lighting the streets imposed in the contract, whatever the necessity for such relief might be. If the board of town auditors could deprive the legislature of this power for five years by entering into a contract with the plaintiff for that time, it might for one hundred years by contracting for that period of time. I think it entirely clear that no such power was conferred by the act of the town auditors. The power so conferred was, like the other powers conferred upon the officers of this and the other towns of the state, subject to modification or repeal by subsequent legislation, and that the town auditors could not by any act prevent or at all control the action of the legislature in this respect." Now, I only refer to this case to show, generally, that in such cases municipal authori-

ties have not the power to cover any unlimited or unreasonable period of time in such contracts.

In our state, the case of *Davis* v. *Town of Harrison, 17 Vr. 79,* is relied upon as upholding the contention of the complainant. In that case a water company was authorized to furnish water upon a contract for a term of years not exceeding ten; but a contract was entered into for twenty years. The court decided that such contract was without authority, and was not severable; and consequently not good for the statutory period of ten years. In support of this doctrine cases are cited. But looking at the act of 1886, although against my first impression, I am now strongly inclined to the conviction that the legislature intended to limit such contracts to the period of one year. In that it says: "The common council, or other municipal authority, may from time to time order any public street to be lighted, and to make and enter into contracts with any other party or parties in relation to the same, *and to cause the annual expenses thereof,* after being ascertained or determined by a resolution, to be certified" &c. These views seem to be fully sustained by the following cases: *City of Brenham* v. *Brenham Water Co., 4 S. W. Rep. 143; Waterbury* v. *Laredo, 5 S. W. Rep. 81; Davenport* v. *Kleinschmidt, 13 Pac. Rep. 249; Saginaw Gas Light Co.* v. *City of Saginaw, 28 Fed. Rep. 529.*

I will advise that the injunction be made perpetual, with costs.